AMOCO CHEMICAL COMPANY
and Amoco Corporation

v.

TEX TIN CORPORATION, Associated Metals and Minerals Corporation, Asoma Corporation, Steel Holdings Corporation, Macsteel, Macsteel, Inc., The Estate of Franz A. Lissauer, Diana Fraid Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, Colin H. Benjamin, Stephan E. Eliel, Donald P. Wefer, and Salvatore Purpura.

No. G–95–405.

United States District Court,
S.D. Texas,
Galveston Division.

April 30, 1996.

Katherine McIlroy Shoebotham, Theodore F. Weiss, Jr., Weiss & Associates, Houston, TX, Richard Austin Schwartz, Schwartz Campbell & Oathout, Houston, TX, Jeff Zimmerman, Washington, DC, Patricia Rooney, Coffield Ungaretti & Harris, Chicago, IL, for Amoco Chemical Company, Amoco Corporation.

Ross Citti, Jackson & Walker, Houston, TX, Laurence S. Kirsch, Elizabeth T. Van Horn, Cadwalader Wickersham & Taft, Washington, DC, Daniel B. Rubock, Cadwalader Wickersham & Taft, New York City, for Tex Tin Corporation, Associated Metals and Minerals Corporation, Asoma Corporation, Steel Holdings Corporation, Macsteel, Inc., Colin H. Benjamin, Donald P. Wefer, Salvatore Purpura.

Ross Citti, Jackson & Walker, Houston, TX, Stephen N. Shulman, Freedman Levy Kroll & Simonds, Washington, DC for The Estate of Franz A. Lissauer, Diana Fraid Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Drakides, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members.

Ross Citti, Jackson & Walker, Houston, TX, for Steve E. Eliel.

### ORDER

KENT, District Judge.

In an Order entered on October 24, 1995, this Court determined that it has subject-matter jurisdiction over all claims asserted by Plaintiffs. Now before the Court are: the Motions to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2) by Defendants Steel Holdings Corporation, Stephan Eliel, Colin Benjamin, Donald Wefer, Salvatore Purpura, Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer,[1] Hannah Hirschfeld, Peter Eliel, the Estate of Franz Lissauer, and Unknown Lissauer Family Members; the Motions to Dismiss all claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) by Defendants Stephan Eliel, ·Colin Benjamin, Donald Wefer, Salvatore Purpura, Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, the Estate of Franz Lissauer, Unknown Lissauer Family Members, Tex Tin Corporation, Associated Metals and Minerals Corporation,[2] Asoma Corporation, Steel Holdings Corporation, and MacSteel, Incorporated; and the Motion for a More Definite Statement of the common-law fraud and the fraudulent transfer claims under Federal Rule of Civil Procedure 12(e) by Defendants Tex Tin Corporation, Associated Metals and Minerals Corporation, Asoma Corporation, Steel Holdings Corporation, MacSteel, Incorporated, Colin Benjamin, Donald Wefer, and Salvatore Purpura.[3]

---

1. Sharon Drakides has changed her name to Sharon Lissauer. *See* Sharon Lissauer Aff. at 1.

2. Associated Metals and Minerals Corporation changed its name to Metallon Holdings Corporation in February of 1995. *See* Benjamin Aff. ¶ 8.

This Order refers to this entity by *its* former name irrespective of time period.

3. Since the filing of these Motions, Plaintiffs have filed their First Amended Complaint ("Amended Complaint"). The causes of action stated in the Amended Complaint are identical to those stated

Also before the Court is Plaintiffs' Motion to Strike various exhibits and affidavits submitted by Defendants in their Supplemental Brief in support of their Motions to Dismiss. In this Order, which fully supersedes the Order entered on January 10, 1996,[4] the Court: **DENIES** the Motions of Steel Holdings Corporation and Donald Wefer to Dismiss for Lack of Personal Jurisdiction; **GRANTS** the Motions of Stephan Eliel, Colin Benjamin, Salvatore Purpura, Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, the Estate of Franz Lissauer, and Unknown Lissauer Family Members to Dismiss for Lack of Personal Jurisdiction; **DENIES** the Motion of Tex Tin Corporation and Associated Metals and Minerals Corporation to Dismiss the breach of contract cause of action asserted against them for failure to state a claim upon which relief can be granted; **DENIES** the Motion of Steel Holdings Corporation to Dismiss the fraudulent transfer cause of action against it for failure to state a claim upon which relief can be granted; **DENIES** the Motions of Associated Metals and Minerals Corporation and Donald Wefer to Dismiss the common-law fraud causes of action against them for failure to state a claim upon which relief can be granted; **GRANTS** the Motion of Donald Wefer to Dismiss the fraudulent transfer cause of action against him for failure to state a claim upon which relief can be granted; **GRANTS** the Motion of Donald Wefer to dismiss all claims predicated on disregarding the corporate entity of one or more of the corporate Defendants for failure to state a claim upon which relief can be granted; **DENIES AS MOOT** the Motions of Stephan Eliel, Colin Benjamin, Salvatore Purpura, Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, the Estate of Franz Lissauer, and Unknown Lissauer Family Member to Dismiss all claims asserted against them for failure to state a claim upon which relief can be granted; **DENIES** the Motion of Tex Tin Corporation, Associated Metals and Minerals Corporation, Asoma Corporation, Steel Holdings Corporation, MacSteel, Incorporated, Colin Benjamin, Donald Wefer, and Salvatore Purpura for a More Definite Statement; and **DENIES AS MOOT** Plaintiffs' Motion to Strike various exhibits and affidavits attached to Defendants' Motions to Dismiss.

## I. BACKGROUND

On June 24, 1988, the United States Environmental Protection Agency ("EPA") proposed for inclusion on the National Priorities List ("NPL") a site located at the intersection of State Highway 146 and FM 519 in Texas City, Texas. This site, hereinafter referred to as "the Texas City Site" or "the Site," is owned ninety percent by Defendant Tex Tin Corporation ("Tex Tin") and ten percent by Amoco Chemical Company ("Amoco"). As a means of avoiding liability for the Site's poor environmental rating under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C.A. §§ 9601–75 (West 1995), Tex Tin and Amoco entered into an Administrative Order on Consent ("AOC") with the EPA on March 30, 1990. The AOC requires Tex Tin and Amoco to conduct a remedial investigation and feasibility study ("RI/FS") of the Texas City Site. Under the AOC, Tex Tin and Amoco must continue performing the RI/FS until the occurrence of one of the specified terminating events, which include satisfactory completion of the RI/FS, a decision by the EPA that the Site should not be listed on the NPL or should be removed from the NPL, and a court decision reversing or enjoining the listing of the Site on the NPL. Tex Tin and Amoco are jointly and severally liable for their RI/FS obligations under the AOC.

---

in the Original Complaint, except that the Amended Complaint adds a common-law fraud action against Colin Benjamin. In light of the Court's conclusion that personal jurisdiction cannot be exercised over Colin Benjamin, this distinction is immaterial. Accordingly, in this Order the Court considers all Motions as they apply to the Amended Complaint.

**4.** The partial redundancy of this Order is not intended to manufacture inconvenience, but rather is intended to provide a single and final pronouncement of the Court's resolution of all Motions submitted on August 8, 1995, by Defendants.

Also on March 30, 1990, Tex Tin and Amoco entered into a private agreement for the purpose of dividing their future financial obligations to be incurred under the AOC. The agreement, hereinafter referred to as "the Funding Agreement," requires Amoco to pay ten percent and Tex Tin to pay ninety percent of all amounts due to the EPA and a consultant to be hired by the parties to perform the RI/FS on their behalf. The Funding Agreement further directs that, at the conclusion of Amoco and Tex Tin's AOC responsibilities, reallocation of expenditures is to be made according to the relative RI/FS cost attributable to the parties' respective lots of property. Amoco Corporation signed the Funding Agreement as a guarantor for Amoco, and Associated Metals and Minerals Corporation ("Associated") signed as a guarantor for Tex Tin.

The Texas City Site was first listed on the NPL on August 30, 1990. On November 28, 1990, Tex Tin sought review of this listing in the United States Court of Appeals for the District of Columbia. While Tex Tin's action was pending, Amoco and Tex Tin abided by the terms of the AOC and the Funding Agreement without incident. Once the Court rendered its decision in *Tex Tin Corp. v. U.S. Envtl. Protection Agency ("Tex Tin I")*, 935 F.2d 1321 (D.C.Cir.1991), however, Amoco and Tex Tin's views of their Texas City Site obligations diverged. Tex Tin took the position that *Tex Tin I* constituted a terminating event under the AOC and therefore relieved Amoco and Tex Tin of their RI/FS obligations. Amoco considered the parties still bound by the AOC to conduct the RI/FS despite *Tex Tin I*. Tex Tin and Amoco's respective positions on the effect of *Tex Tin I* on their AOC obligations led to Tex Tin's refusal to fund additional RI/FS efforts and Amoco's maintenance of the RI/FS without Tex Tin's aid.

This state of affairs persisted up until the United States Court of Appeals for the District of Columbia decided *Tex Tin Corp. v. U.S. Envtl. Protection Agency ("Tex Tin II")*, 992 F.2d 353 (D.C.Cir.1993), in which the Texas City Site was unequivocally ordered removed from the NPL. Upon the issuance of *Tex Tin II*, Amoco and Tex Tin agreed that they were no longer obligated to perform the RI/FS under the AOC. The RI/FS was then discontinued, but, by this time, Amoco had already incurred expenses in excess of 8.1 million dollars by solely funding the RI/FS from the time of Tex Tin's refusal to continue its funding. Amoco has made several demands for reimbursement for these expenditures, which have been refused by both Tex Tin and Associated alike.

Amoco and Amoco Corporation now assert several causes of action based on these occurrences.[5] At the heart of the Amended Complaint is a breach of contract claim against Tex Tin and Associated for breach of the Funding Agreement. Unfortunately, the Amended Complaint is imprecise both as to the other causes of action asserted and as to the parties against whom they are asserted. In accordance with Federal Rule of Civil Procedure 9(f), which requires the Court to construe the pleadings so as "to do substantial justice," Fed.R.Civ.P. 9(f), the Court ultimately concludes that the additional causes of action asserted in the Amended Complaint are: common-law fraud claims against Associated, Donald Wefer, and Colin Benjamin for making false representations that induced Plaintiffs to execute the Funding Agreement; fraudulent transfer claims against Steel Holdings Corporation, Stephan Eliel, Emil Lissauer, Diana Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, the Estate of Franz Lissauer, Unknown Lissauer Family Members, Colin Benjamin, Donald Wefer, and Salvatore Purpura for a transfer of Associated's assets to Steel Holdings; and fraudulent transfer claims against Emil Lissauer, Diana Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, the Estate of Franz Lissauer, and Unknown Lissauer Family Members for a transfer of Associated stocks to Steel Holdings. Plaintiffs further seek to disregard the corporate entities of Tex Tin,

---

**5.** *The Court will not waver from, nor permit motions or arguments urging waver from, its assessment of the causes of action asserted in the Amended Complaint as stated in this Order. If* Plaintiffs feel that the Court has misconstrued the Amended Complaint in any manner, recourse may be found *only* as provided by Federal Rule of Civil Procedure 15(a).

Associated, Steel Holdings, Asoma Corporation, and MacSteel, Inc. to reach all Defendants on all causes of action asserted. Under the aforementioned theories of liability, Plaintiffs seek damages, pre- and post-judgment interest, costs and attorneys fees, and a declaration of rights and liabilities.

## II. Personal Jurisdiction Over Defendants Steel Holdings Corporation, Stephan Eliel, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, the Estate of Franz Lissauer, Unknown Lissauer Family Members, Colin Benjamin, Donald Wefer, and Salvatore Purpura

### A. Legal Standards Governing Personal Jurisdiction

 The plaintiffs bear the burden of establishing personal jurisdiction over each defendant. *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *Rittenhouse v. Mabry,* 832 F.2d 1380, 1382 (5th Cir.1987). This burden requires the plaintiffs to make a prima facie showing of the facts upon which jurisdiction is predicated. *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir.1983); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 490–91 (5th Cir.1974); *see also Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.), *cert. denied,* 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992) (stating that proof of these facts by a preponderance of the evidence is not required). For purposes of deciding whether a prima facie showing of personal jurisdiction has been made, the Court must accept uncontroverted allegations in the pleadings and resolve factual disputes emerging from the affidavits in favor of the plaintiffs. *Wilson,* 20 F.3d at 648; *D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg, Inc.,* 754 F.2d 542, 546 (5th Cir.1985). The plaintiffs need not establish all facts necessary to support a cause of action for the Court to exercise personal jurisdiction over the defendants. *Cousteau,* 495 F.2d at 490.

 Absent a challenge to the sufficiency of process or service of process, this Court needs only to consider the constraints imposed by the United States Constitution to determine whether personal jurisdiction may be asserted. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 418 (5th Cir.1993) (stating that the Texas long-arm statute is coextensive in reach with the United States Constitution); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990) (same) (citing Texas Civ.Prac. & Rem.Code Ann. § 17.042); *see also* Fed.R.Civ.P. 4(e)(1) (permitting service of process pursuant to the long-arm statute of the state in which the court is located). The United States Supreme Court has specifically rejected "talismanic jurisdictional formulas" for assessing the constitutionality of personal jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 485–86, 105 S.Ct. 2174, 2189–90, 85 L.Ed.2d 528 (1985). Instead, the Court has emphasized the need for practical considerations in making such determinations. *See Cousteau,* 495 F.2d at 499 (characterizing Supreme Court opinions as stressing the need for common sense judgments and case-by-case determinations of personal jurisdiction).

 The constitutional analysis of personal jurisdiction consists of a two-part inquiry. First, the Court must decide whether each defendant has established "minimum contacts" with the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). A defendant establishes minimum contacts with the forum state by purposefully engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there." *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490; *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *see also Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873–74, 80 L.Ed.2d 404 (1984) (holding that the unilateral activity of another entity can never serve as the basis for personal jurisdiction over a defendant). If the conduct of a defendant which supports personal jurisdiction is related to a stated cause of action, personal

jurisdiction is known as "specific jurisdiction." *Ruston Gas Turbines,* 9 F.3d at 418–19; *Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1496 (5th Cir.1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994). A single contact with the forum state can support specific jurisdiction. *Ruston Gas Turbines,* 9 F.3d at 419; *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir.1988). Alternatively, if a defendant has insufficient contacts related to a stated cause of action to support specific jurisdiction, "continuing and systematic" business contacts unrelated to the cause of action may confer what is known as "general jurisdiction." *Helicopteros Nacionales de Colombia,* 466 U.S. at 414–15, 104 S.Ct. at 1872; *Villar,* 990 F.2d at 1496.

■■■ If minimum contacts have been found to be present, the Court must then decide whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158; *see also Ruston Gas Turbines,* 9 F.3d at 419 (holding that both prongs of the analysis must be satisfied before personal jurisdiction can be asserted). The fairness of exercising jurisdiction is determined by balancing "the burden on the defendant, the interests of the forum State, ... the plaintiff's interest in obtaining relief[,] ... 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (majority opinion) (quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564 (citations omitted)); *see also Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184–85 (listing the same factors). For consideration of "traditional notions of fair play and substantial justice" to preclude the exercise of jurisdiction, a defendant "must present a compelling case" that the exercise of jurisdiction would be unreasonable in light of the surrounding circumstances. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85.

### B. *Jurisdiction Over Steel Holdings Corporation*

Plaintiffs advance three theories for specific jurisdiction over Steel Holdings. First, Plaintiffs claim that Steel Holdings intentionally deprived Associated of its ability to fund the RI/FS in Texas by serving as the recipient of a fraudulent transfer of Associated's assets. Second, they contend that the breach of the Funding Agreement is attributable to Steel Holdings as the alter ego of Associated. Third, they maintain that Steel Holdings participated in a fraudulent scheme directed toward Texas. The Court only finds it necessary to consider Plaintiffs' first argument on this issue.

■■■ The Amended Complaint avers that all of Associated's assets were transferred to Steel Holdings to prevent Associated from meeting its Funding Agreement obligations. Defendants have produced no evidence to the contrary. Rather, they argue that these events do not establish specific jurisdiction over Steel Holdings because the asset transfer is not alleged to have occurred in Texas. Although the mere foreseeability of injury in a state is not enough to establish personal jurisdiction in that state, *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. at 2183, intentional conduct designed to cause harm in the forum state is, indeed, a basis for finding minimum contacts. *Calder v. Jones,* 465 U.S. 783, 787–90, 104 S.Ct. 1482, 1485–88, 79 L.Ed.2d 804 (1984) (holding that the defendants must "reasonably anticipate being haled into court [in the forum state]" because "their intentional, and allegedly tortious, actions were expressly aimed at" the forum state and "they knew that the brunt of th[e] injury would be felt" in the forum state). Moreover, intentional acts need not actually occur in the forum state to confer specific jurisdiction. *See Calder,* 465 U.S. at 791, 104 S.Ct. at 1488 (holding the defendants' acts outside of the forum state, which caused injury in the forum state, subjected them to personal jurisdiction). The Court accordingly finds, from the prima facie showing of Plaintiffs, that Steel Holdings established minimum contacts with Texas by intentionally impairing Associated's ability to fund the RI/FS in Texas as required by the Funding Agree-

ment.[6] In addition, the Court finds that Steel Holdings has not presented a compelling case that exercising jurisdiction over it would be unreasonable under the circumstances. Defendant Steel Holdings' Motion to Dismiss for Lack of Personal Jurisdiction, therefore, must be **DENIED.**

### C. Jurisdiction Over Stephan Eliel, Colin Benjamin, and Salvatore Purpura

Plaintiffs advance several theories under which Stephan Eliel, Colin Benjamin, and Salvatore Purpura are subject to personal jurisdiction. Plaintiffs primarily argue that specific jurisdiction exists over each of these Defendants because of their respective roles in Tex Tin's decision to cease funding the RI/FS, their establishment of an alter ego relationship with one or more of the corporate Defendants, and their participation in a transfer of assets from Associated into Steel Holdings.[7] In addition, Plaintiffs contend that the Court can exercise general jurisdiction over each of these Defendants.[8]

1. Attribution of the Acts of the Corporate Defendants to Stephan Eliel, Colin Benjamin, and Salvatore Purpura

 The fiduciary-shield doctrine provides that the acts of a corporation can be attributed to individuals for jurisdictional purposes only if the corporate entity can be disregarded to impose liability on the individuals. *See Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir.1985) (explaining that "the fiduciary-shield doctrine ... holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation") (citing 4 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 1069 (Supp. 1984)); *see also* 4 Charles A. Wright & Arthur E. Miller, *Federal Practice and Procedure: Civil* § 1069, at 370–74 (1987) (stating that federal courts cannot assert personal jurisdiction over individuals whose contacts with the forum state arise while acting as corporate officers, unless the corporate entity can be disregarded to reach the individual). This Court looks to the law of the State of incorporation for each corporate Defendant to determine whether its corporate entity should be disregarded. *See* Restatement (Second) of Conflict of Laws §§ 307, 309 (1971).[9] The corporate entities sought to be disregarded in the case at bar, namely Tex

---

6. These contacts, of course, relate to the fraudulent transfer cause of action asserted against Steel Holdings for jurisdictional purposes. *See infra* part III.C (denying Defendant Steel Holding's Motion to Dismiss the fraudulent transfer cause of action stated against it).

7. In direct defiance of the Order of this Court entered on January 10, 1996, Plaintiffs devote fully two of the fifteen pages of their Supplemental Brief in Opposition to arguing, for the first time, that personal jurisdiction can be exercised over Colin Benjamin based on his actions relating to the common-law fraud claim stated against him in the Amended Complaint. *See* Order entered on January 10, 1996, at 15 ("Supplemental Briefs ... *shall* limit their discussion of jurisdiction over [Defendants Colin Benjamin, Stephan Eliel, and Salvatore Purpura] to the issues of ongoing business contacts and abuse of the corporate privilege of the corporate Defendants.") (emphasis added). In this Order, the Court, in conformity with its prior intention explicitly stated in the Order of January 10, 1996, will not in any manner consider these new arguments. *Cf.* Benjamin Aff. ¶ 22 ("I did not personally negotiate either the [AOC] or the Funding Agreement").

8. Plaintiffs seem to argue that one or more of the individual Defendants have established minimum contacts with Texas by engaging in constructive fraud. This argument is utterly irrelevant to whether specific jurisdiction exists, because, as unequivocally stated in the Order of January 10, 1996, the Amended Complaint does not state any claims for constructive fraud. *See* Order of January 10, 1996, at 5–6 & n. 4. Insofar as general jurisdiction issues are implicated by this argument, the constructive fraud alleged falls far short of constituting continuous and systematic business contacts.

9. The Court applies Texas choice-of-law rules to determine which State's law governs each of the fraudulent transfer claims. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding that in diversity cases federal courts apply the choice-of-law rule of the state in which they are located, because the rule of *Erie R.R.* applies in the choice-of-law context); *see also Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) ("Except in matters governed by [federal law], the law to be applied in any case is the law of the State."); *Doty v. Sewall,* 908 F.2d 1053, 1063 (1st Cir. 1990) (noting "it is well settled" that *Erie R.R.* applies to pendant claims asserted in federal-question cases). Under Texas choice-of-law rules, Texas courts apply the law of the state

Tin, Associated, Steel Holdings, Asoma Corporation, and MacSteel, Inc., are incorporated in New York, Texas, and Delaware. Under the law of these states, the liabilities of a corporation will not reach its directors, officers, or shareholders unless the corporate privilege has been abused, or the corporation has been dominated, for personal use. *E.g.,* *Thrift v. Hubbard,* 44 F.3d 348, 353 (5th Cir.1995) (holding that Texas law permits disregard of the corporate entity only against individuals who personally benefit from abusing the corporate privilege); *Gebelein v. Perma–Dry Waterproofing Co.,* Civ. No. 6210, 1982 WL 8776, at *1–*2 (Del.Ch. Jan. 12, 1982) (holding that the plaintiff must show "that the corporation has no independent reason for existence and that its sole purpose is to provide a means for doing the act and bidding of the individual"); *Walkovszky v. Carlton,* 18 N.Y.2d 414, 417, 276 N.Y.S.2d 585, 223 N.E.2d 6 (N.Y.1966) (holding that an individual will be liable for the acts of the corporation if the individual "uses control of the corporation to further his own rather than the corporation's business"); *see also Geyer v. Ingersoll Publications Co.,* 621 A.2d 784, 793 (Del.Ch.1992) (stating that commission of a fraud and the existence of an alter ego relationship are the bases for individual liability for corporate acts); *Morris v. New York State Dep't of Taxation and Fin.,* 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (N.Y.1993) (stating that "complete domination" of a corporation is required to disregard the corporate entity, and citing approvingly *Walkovszky); Castleberry v. Branscum,* 721 S.W.2d 270, 271–73 (Tex. 1986) (stating that shareholders, officers, and directors are normally insulated from liability assessed against the corporation, unless they have abused the corporate privilege).

 Defendants have submitted evidence that none of the circumstances permitting disregard of the corporate entities of the corporate Defendants exists. *E.g.,* Benjamin Aff. ¶¶ 10, 14, 17, 20, 21; Purpura Aff. ¶ 6; Wefer Aff. ¶¶ 9, 10. In response, Plaintiffs have failed to submit evidence that any of the non-corporate Defendants have personally benefitted through abuse of the corporate privilege. Rather, Plaintiffs make arguments tending to suggest that the corporate entities of the corporate Defendants may be disregarded to reach each other.[10] Based on the present record, therefore, the Court cannot conclude that the acts of any of the corporate Defendants support jurisdiction over Stephan Eliel, Colin Benjamin, or Salvatore Purpura.

### 2. Decision to Cease Payments Under the Funding Agreement

 The fiduciary-shield doctrine likewise applies to Tex Tin's decision to discontinue funding of the RI/FS, because that decision amounts to a specific act of a corporation. *See supra* part II.C.1. The analysis of whether the Court can assert jurisdiction over Stephan Eliel, Colin Benjamin, and Salvatore Purpura based on the decision of Tex Tin to discontinue funding the RI/FS, therefore, collapses into the immediately preceding analysis. Consequently, for the same reasons discussed above, the present record does not permit the Court to base jurisdiction over these Defendants on the role they

---

having the "most significant relationship" to the particular substantive issue, except in contract cases in which the parties have validly selected the law to be applied. *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1413 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex.1984). The choice-of-law analysis proceeds in accordance with the Restatement (Second) of Conflict of Laws (1971). *Id.* §§ 6, 145; *Duncan,* 665 S.W.2d at 420–21; *Gutierrez v. Collins,* 583 S.W.2d 312, 318–19 (Tex.1979).

**10.** In the Order of January 10, 1996, and during the conference of January 29, 1996, the Court explicitly and unambiguously stated that the Supplemental Briefs of the parties shall not address

issues concerning whether the corporate entity of one or more the corporate Defendants may be disregarded to reach other corporate Defendants. *See, e.g.,* Order of January 10, 1996, at 38; *see also id.* at 33 ("Plaintiffs also emphasize that the corporate Defendants have common directors and officers and use common office space and telephone numbers, but these facts are also insufficient to permit disregard of a corporate entity. *See, e.g., Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1160 (5th Cir.1983) (noting that "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations")").

played in Tex Tin's decision to cease funding the RI/FS.

### 3. Transfer of Associated's Assets

■ The transaction forming the basis for the fraudulent transfer claims against Colin Benjamin, Stephan Eliel, and Salvatore Purpura is a transfer of assets from Associated into Steel Holdings made with the intention of disabling Associated from meeting its Funding Agreement obligations. The fraudulent transfer claims founded upon this transaction are governed by the Uniform Fraudulent Transfer Act ("UFTA"), Tex.Bus. & Com.Code Ann. §§ 24.001–.013 (Vernon 1987 & 1995 Supp.). *See* Restatement (Second) of Conflict of Laws §§ 6, 145;[11] *see also supra* note 9 (explaining that the Restatement (Second) of Conflict of Laws governs the choice-of-law determination). The UFTA only creates liability against "the first transferee of the asset," "the person for whose benefit the transfer was made," or a "subsequent transferee." UFTA § 24.009(b). The UFTA does not create liability against the transferor or a third party to the transaction.[12] *See id.* §§ 24.008–.009. Judgment, therefore, cannot be entered against Colin Benjamin, Stephan Eliel, or Salvatore Purpura under the UFTA, because none is alleged to have received any assets or proceeds of assets as a result of the transfer at issue, which is alleged to have been made for the benefit of Associated. *See id.* §§ 24.008–.009; *see also Hare v. Hearst Corp.,* No. 9–93–207, 1994 WL 103380, at *2 (Tex.App.—Beaumont March 1, 1994) (concluding that the UFTA does not create liability against directors or officers of a corporation who are not involved in a transaction personally). In

other words, no fraudulent transfer claim upon which relief can be granted has been stated against Colin Benjamin, Stephan Eliel, or Salvatore Purpura. Consequently, the Court must find that these Defendants cannot reasonably anticipate being haled into court in Texas based on their roles in a fraudulent transfer. Jurisdiction over these Defendants, therefore, cannot be grounded on their participation in a transfer of Associated's assets to Steel Holdings.

### 4. General Jurisdiction Over Stephan Eliel, Colin Benjamin, and Salvatore Purpura

■ Stephan Eliel, Colin Benjamin, and Salvatore Purpura have submitted affidavits evincing their lack of contacts with Texas, ongoing or otherwise. *E.g.,* Eliel Aff. ¶ 10; Benjamin Aff. ¶ 27; Purpura Aff. ¶ 11. Plaintiffs have not produced evidence indicating that any of these Defendants maintain ongoing business contacts with Texas outside of their respective roles as directors or officers of the corporate Defendants. Based on the present record, therefore, the Court cannot conclude that general jurisdiction exists over Stephan Eliel, Colin Benjamin, or Salvatore Purpura. *See Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir.1985) (holding that the fiduciary-shield doctrine prohibits the exercise of personal jurisdiction over individuals based on contacts established strictly in their roles as agents of a corporation, unless the corporate entity can be disregarded to impose liability on those individuals); *see also supra* part II.C.1 (discussing the fiduciary-shield doctrine).

### 5. Conclusion

The Motions to Dismiss for Lack of Personal Jurisdiction by Defendants Stephan El-

---

**11.** In the case at bar, the Court has little difficulty concluding that Texas law governs each and all of the asserted fraudulent transfer causes of action, because the alleged purpose of all of the transfers at issue is to impair Associated's ability to perform under the Funding Agreement, the interpretation of which is governed by Texas law, *see infra* part III.B, and because the Funding Agreement contemplates performance by funding the RI/FS, which is to be conducted in Texas. The Court further notes that the citizenship of the key corporate players in the relevant events is so varied as to be of little aid in choosing the law to be applied, given that Amoco is a citizen of Delaware and Illinois, Amoco Corporation is a

citizen of Indiana and Illinois, Tex Tin is a citizen of Texas, Associated is a citizen of New York, and Steel Holdings is a citizen of Delaware and New York.

**12.** Nor would such a scheme make sense, given that the guiding principle of the UFTA is that, as to creditors, property fraudulently transferred, or its proceeds, continues in the debtor and, therefore, is subject to the demands of creditors. *United States v. Shepherd,* 834 F.Supp. 175, 180 (N.D.Tex.1993), *rev'd on other grounds,* 23 F.3d 923 (5th Cir.1994).

iel, Colin Benjamin, and Salvatore Purpura are **GRANTED.**

### D. *Jurisdiction Over Donald Wefer*

Plaintiffs advance multiple bases for jurisdiction over Defendant Donald Wefer.[13] Primarily, they argue that specific jurisdiction exists over Donald Wefer due to his making a fraudulent representation during negotiation of the Funding Agreement, his role in the decision of the corporate Defendants to breach the Funding Agreement, his establishment of an alter ego relationship with one or more of the corporate Defendants, his participation in a transfer of assets from Associated into Steel Holdings, and his signing of the Funding Agreement on behalf of Associated. The Amended Complaint also states the he is subject to general jurisdiction. The Court only finds it necessary to consider the first basis advanced for specific jurisdiction.

█ The Amended Complaint avers that, during negotiation of the Funding Agreement, Donald Wefer represented to Plaintiffs that Associated had the ability to guarantee Tex Tin's Funding Agreement obligations, despite his knowledge of Associated's inability to do so. Defendants have not produced evidence to the contrary. Rather, they argue that this allegation does not establish specific jurisdiction without an accompanying allegation that Donald Wefer was in Texas when he made the representation to Plaintiffs. As discussed in connection with Steel Holdings, though, harmful conduct intentionally directed toward the forum state can suffice for jurisdictional purposes. *See Calder,* 465 U.S. at 787–90, 104 S.Ct. at 1485–88; *supra* part II.B (finding personal jurisdiction over Steel Holdings). The Court accordingly finds, by the prima facie showing of Plaintiffs, that Donald Wefer established minimum contacts by intentionally inducing Plaintiffs to enter into the Funding Agreement through inaccurately

representing Associated's financial viability and strength. *Cf. Penroc Oil Corp. v. Donahue,* 476 S.W.2d 849, 851 (Ct. of Civ.App. of Tex.—El Paso 1972, writ denied) (holding that an individual's status as corporate officer or director does not absolve him from liability for acts of fraud he commits, even if made while acting in the corporation's best interests or if the corporation is also liable for the fraud). Defendants have not demonstrated that asserting jurisdiction over Donald Wefer is unreasonable under the circumstances. Consequently, the Court must **DENY** Defendant Donald Wefer's Motion to Dismiss for Lack of Personal Jurisdiction.

### E. *Jurisdiction Over Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, and the Estate of Franz Lissauer*

Plaintiffs advance two theories for specific jurisdiction over Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, and the Estate of Franz Lissauer. First, Plaintiffs argue that these Defendants fraudulently transferred assets to Steel Holdings on two separate occasions. Second, Plaintiffs argue that the acts of the corporate Defendants can be imputed to these Defendants under doctrines permitting disregard of the corporate entity. In addition, Plaintiffs aver that these Defendants are subject to general jurisdiction.[14]

#### 1. Transfer of Assets to Steel Holdings

Two distinct transactions form the basis of the fraudulent transfer claims against Diana Lissauer, Emil Lissauer, Diana Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, and the Estate of Franz Lissauer. The first is a transfer to Steel Holdings of ownership in Associated stock.

---

**13.** Despite the Court's explicit Order to the parties not to address the issue of personal jurisdiction over Donald Wefer in their Supplemental Briefs, and despite the oral clarification of the precise meaning of that Order on January 29, 1996, Plaintiffs argue in their Supplemental Brief in Opposition that personal jurisdiction may be exercised over Donald Wefer. The Court finds

no need to consider, and in fact does not consider, these duplicitous arguments.

**14.** The Court's prior comments on Plaintiffs' arguments concerning constructive fraud are equally applicable here. *See supra* note 8.

The second, which also serves as the basis for the fraudulent transfer claims against Colin Benjamin, Stephan Eliel, Salvatore Purpura, and Donald Wefer, is a transfer of assets from Associated into Steel Holdings. Plaintiffs aver that both of these transfers were made with the intention of disabling Associated from meeting its Funding Agreement obligations.

 The claims founded upon these transactions are governed by the Uniform Fraudulent Transfer Act ("UFTA"), Tex.Bus. & Com.Code Ann. §§ 24.001–.013 (Vernon 1987 & 1995 Supp.). *See supra* note 11 & accompanying text; *see also supra* part II. C.3. Under the UFTA, judgment cannot be entered against Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, or the Estate of Franz Lissauer, because none is alleged to have received any assets or proceeds of assets as a result of either of the transfers at issue, both of which are alleged to have been made for the benefit of Associated. *See supra* part II.C.3 (discussing the entities subject to liability under the UFTA). Given this failure of Plaintiffs to state a fraudulent transfer claim upon which relief can be granted against Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, or the Estate of Franz Lissauer, the Court must find that these Defendants cannot reasonably anticipate being haled into court in Texas based on their roles in a fraudulent transfer of Associated stock, or a fraudulent transfer of Associated's assets, to Steel Holdings. Such events, therefore, cannot support personal jurisdiction over Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown

Lissauer Family Members, or the Estate of Franz Lissauer.

### 2. Imputation of the Acts of the Corporate Defendants

 As discussed above, the fiduciary-shield doctrine prohibits the acts of one or more of the corporate Defendants from being imputed to an individual for jurisdictional purposes unless the corporate privilege has been abused, or the corporation has been dominated, for personal use. *See supra* part I.C.1. Defendants have submitted a substantial amount of evidence that these Defendants have not abused the corporate entities of the corporate Defendants. *E.g.*, Benjamin Aff. ¶¶ 10, 14, 17, 20, 21; Purpura Aff. ¶ 6; Wefer Aff. ¶¶ 9, 10. In response, Plaintiffs have failed to submit evidence of abuse of corporate formalities for personal gain by these Defendants during the relevant time period.[15] Specifically, the only allegation of potential relevance is that, at a time prior to any of the events giving rise to this litigation, Associated paid certain legal fees on behalf of its owners. This allegation is insufficient to demonstrate the kind of abuse of the corporate privilege required for imputation of the acts of the corporate Defendants to individuals. *See supra* part I.C.1. Based on the current record, therefore, the Court cannot conclude that the actions of the corporate Defendants give rise to personal jurisdiction over Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, or the Estate of Franz Lissauer.

### 3. General Jurisdiction

The Amended Complaint avers that this Court can exercise general jurisdiction over Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Mem-

---

15. In their Brief in Opposition, Plaintiffs stress that Associated paid certain legal fees on behalf of its owners in 1985, but this seemingly isolated incident occurred well prior to any of the events giving rise to this litigation and cannot, on its own, support a finding of alter ego liability by reasonable jury. *Cf. supra* part II.C.1 (discussing situations in which disregard of the corporate entity is permissible). In addition, Plaintiffs argue that Associated funded trusts for a number of the individual Defendants, but the evidence cited simply does not support this proposition. *See* Diana Lissauer Aff. ¶ 9 (merely indicating that trusts benefitting certain of the individual Defendants held Associated stock); Sharon Lissauer Aff. ¶ 9 (same); Hannah Hirschfeld Aff. ¶ 9 (same); Caroline Hirschfeld Aff. ¶ 9 (same); Peter Eliel Aff. ¶ 9 (same); Gordon Lissauer ¶ 8 (same).

bers, and the Estate of Franz Lissauer. Defendants have produced evidence that Diana Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, and Gordon Lissauer, do not have ongoing business contacts with Texas. *E.g.,* Diana Lissauer Aff. ¶¶ 3–8; Sharon Lissauer Aff. ¶¶ 3–8; Hannah Hirschfeld Aff. ¶¶ 3–8; Peter Eliel Aff. ¶¶ 3–8; Gordon Lissauer Aff. ¶¶ 2–6. Plaintiffs have failed to produce evidence, or even argue in their Brief in Opposition or Supplemental Brief in Opposition, to the contrary. Based on the present record, therefore, the Court cannot exercise general jurisdiction over Diana Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, or Gordon Lissauer.

Regarding Emil Lissauer, Unknown Lissauer Family Members, and the Estate of Franz Lissauer, neither Plaintiffs nor Defendants have submitted any arguments or evidence of continuing and systematic business contacts with Texas. Despite the Court's warning in its Order of January 10, 1996, that failure to argue that general jurisdiction may be exercised over these Defendants in the Supplemental Briefs would be deemed "a complete and utter retraction of that party's position regarding general jurisdiction over Emil Lissauer, Unknown Lissauer Family Members, and the Estate of Franz Lissauer," *see* Order of January 10, 1996, at 19–20, Plaintiffs have not argued that general jurisdiction exists over these Defendants. Based on the current record, therefore, the Court cannot assert general jurisdiction over Emil Lissauer, Unknown Lissauer Family Members, or the Estate of Franz Lissauer.

### 4. Conclusion

The Court **GRANTS** the Motions to Dismiss for Lack of Personal Jurisdiction by Defendants Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, and the Estate of Franz Lissauer.

### III. Motions Filed Pursuant to Rule 12(b)(6)

#### A. *Standard of Review*

■ A motion for failure to state a claim upon which relief can be granted is evaluated under one of two alternative standards of review. If the Court considers the pleadings exclusively, the motion is granted only if it appears that no state of facts could be proven to support the cause of action asserted. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). If the Court relies upon evidence submitted along with the motion, the standards governing motions for summary judgment apply. Fed.R.Civ.P. 12(b).

#### B. *Breach of Contract Claim Against Tex Tin and Associated*

■ Plaintiffs' breach of contract claim is based specifically on the Funding Agreement. Absent a challenge to the Funding Agreement's choice of Texas law, which has not as of yet occurred, the Court must give the choice-of-law provision binding effect. *Budge v. Post,* 643 F.2d 372, 374 n. 1 (5th Cir.1981) (stating that a federal court located in Texas applies Texas choice-of-law rules, which fully respect contractual provisions choosing Texas law). Under Texas law, the elements for breach of contract are: (1) the existence of a contract; (2) the creation of duties under the contract; (3) a breach of a duty by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Snyder v. Eanes Indep. Sch. Dist.,* 860 S.W.2d 692, 695 (Tex.App.—Austin 1993, writ denied); *Corpus Christi v. Bayfront Assocs., Ltd.,* 814 S.W.2d 98, 103 (Tex.App.—Corpus Christi 1991, writ denied). Unambiguous provisions appearing in the contract must be given the plain meaning of their terms. *See City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968) (noting further that, absent ambiguity, "the construction of the written instrument is a question of law for the Court").

■ Defendants' principal argument for dismissal of the breach of contract action is that no duty to perform arose under the Funding Agreement. In particular, Defendants argue that, under the terms of the AOC, *Tex Tin I* terminated the parties' duty to conduct the RI/FS. *Cf. Snyder,* 860 S.W.2d at 695 (stating that the creation of duties under a contract and the failure to perform those duties are among the elements for breach of contract); *Bayfront Assocs.,*

*Ltd.,* 814 S.W.2d at 103 (same). The AOC, which is governed by federal law, *e.g., Priebe & Sons v. United States,* 332 U.S. 407, 414, 68 S.Ct. 123, 127, 92 L.Ed. 32 (1947) (Black, J., dissenting) ("[T]he decisions of this Court ... hav[e] established that the construction and validity of *all* government contracts are governed by federal law...."); *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 55 n. 4 (2d Cir.1985) (noting that federal common law governs the interpretation of government contracts), is interpreted through application of Texas law. *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 98, 111 S.Ct. 1711, 1717, 114 L.Ed.2d 152 (1991) (stating the considerations for deciding whether to incorporate state law) [16].

■ The AOC provision at issue contains no ambiguity, and therefore it must be construed in accordance with its plain meaning. The provision provides for termination of Amoco and Tex Tin's obligations by a "decision by an authorized court reversing or enjoining the listing of the [Texas City Site] on the NPL." The specific disposition reached in *Tex Tin I,* in contrast, is that of a remand.

Despite Defendants' arguments to the contrary, *Tex Tin I* did not also reverse or vacate the listing of the Texas City Site on the NPL. The opinion makes no reference whatsoever to reversal or vacation of the EPA's decision to list the Site on the NPL or deletion of the Site from the NPL. To be sure, the Court provides no indication in *Tex Tin I* that a reversal or a vacation is even contemplated by the Court. The Court simply chose to delay its decision upon finding that the EPA's actions were not adequately explained.[17] *See Tex Tin I,* 935 F.2d at 1324 (ordering a "remand for a reasoned explanation").

In an attempt to cast doubt on the meaning of the Court's unambiguous pronouncement in *Tex Tin I,* Defendants argue that *Tex Tin I* functioned as a reversal because section 706(2)(A) of the Administrative Procedure Act ("APA"), 5 U.S.C.A. §§ 701–06 (West 1977 & Supp.1995), forbids an appellate court from remanding without also reversing or vacating the NPL listing challenged.[18] This Court, however, need not explore the contours of the APA to resolve the issue at hand. The AOC's termination provision contemplates actions actually taken by a court, not the theoretical consistency of those actions with the APA. If the Court issuing *Tex Tin I* wholeheartedly endorsed Defendants's view that reversal must accompany a remand under the APA, perhaps the opinion could be read as implicitly containing a reversal. The Court of Appeals for the District of Columbia Circuit, however, has unequivocally rejected this position. *E.g., Massachusetts v. United States Nuclear Regulatory Com'n,* 924 F.2d 311, 336 (D.C.Cir.) ("In appropriate cases, we

---

16. Insofar as the law of contracts may differ among the States, Texas law clearly governs, because the entire focus of the AOC is the RI/FS of the Texas City Site located in Texas. *See* Restatement (Second) of Conflict of Laws §§ 6, 188; *supra* note 9 (explaining that the choice-of-law decision is made in accordance with the Restatement (Second) of Conflict of Laws).

17. The parties argue at length as to the importance of a footnote in *Tex Tin Corp. v. U.S. Envtl. Protection Agency* ("*Tex Tin II*"), 992 F.2d 353 (D.C.Cir.1993), which reads: "In *National Gypsum Co. v. U.S. Environmental Protection Agency,* 968 F.2d 40, 41 (D.C.Cir.1992), a different panel of this court inaccurately cited *Tex Tin I* as a case involving the vacating of an NPL listing decision." *Tex Tin II,* 992 F.2d at 354 n. 1. Although this Court normally would defer to the view of another court regarding the meaning of that court's own order, different panels of the issuing court have expressed contrary views of *Tex Tin I. See id.* Therefore, this Court agrees with Defendants that the assessment of *Tex Tin I* in *Tex Tin II* should not weigh into this Court's decision.

18. This is, in essence, an adoption of Judge Randolph's position as stated in *Checkosky v. S.E.C.,* 23 F.3d 452 (D.C.Cir.1994). An involved debate of this issue occurs in *Checkosky. Compare id.* at 464 (Silberman, J., concurring) (arguing that "a reviewing court may proceed cautiously by remanding for fuller explanation before deciding whether the agency's action violated administrative law" and that Judge Randolph's contrary position is based on the incorrect premise that "whenever any agency provides a reviewing court with an inadequate explanation of its decision, the agency necessarily has acted unlawfully") *with id.* at 490 (Randolph, J., concurring) (stating that "[t]he remand-only disposition, embraced by Judge Silberman, is contrary to law" because the APA requires courts to vacate agency actions not adequately explained).

will remand without vacating an agency's order where the reason for the remand is a lack of reasoned decisionmaking."), *cert. denied,* 502 U.S. 899, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991); *International Union v. Federal Mine Safety & Health Admin.,* 920 F.2d 960, 966–67 (D.C.Cir.1990) ("We have commonly remanded without vacating an agency's rule or order where the failure lay in lack of reasoned decisionmaking, ... [and] also where the order was otherwise arbitrary and capricious....") (citations omitted); *Independent U.S. Tanker Owners Comm. v. Dole,* 809 F.2d 847, 854–55 (D.C.Cir.) (holding that the reviewing court may remand with instructions of how to cure the deficiency without vacating the agency's action or, alternatively, vacate the agency's action and require it to begin the process anew), *cert. denied,* 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987). Although Defendants attempt to recast decisions such as *United States Nuclear Regulatory Com'n, International Union,* and *Dole* as speaking only to whether a "vacation" must accompany remand, as opposed to whether a "reversal" must accompany remand, such a distinction cannot be drawn because to "reserve" *is* to "vacate." *E.g., Wheeler v. John Deere Co.,* 935 F.2d 1090, 1096 (10th Cir.1991) (stating unequivocally that to "reverse" means to "vacate," and citing as support, among other sources, two opinions of the United States Supreme Court and two opinions of United States Courts of Appeals). Accordingly, the use of the word "vacate" instead of "reverse" by the Court of Appeals for the District of Columbia Circuit does not remove the present situation from the ambit of the Court's prior opinions. *Tex Tin I,* therefore, can only be viewed as doing exactly what it says: ordering a remand, and nothing more. *See Tex Tin I,* 935 F.2d at 1324.

■ In addition, Defendants advance four supplemental arguments as to why the breach of contract claim should be dismissed on the pleadings. First, Defendants argue that under the doctrine of substantial frustration of purpose, *see* Restatement (Second) of Contracts § 265 (1981), their Funding Agreement obligations were discharged with the rendering of *Tex Tin I.* This argument must fail, however, because its premise, that *Tex Tin I* obviated the AOC obligation to continue the RI/FS, has already been rejected. *See supra.* Second, Defendants state an argument which hinges on the finding of a conditional reversal in *Tex Tin I.* The earlier finding by the Court that *Tex Tin I* does not contain a reversal also defeats this argument. Third, Defendants argue that Plaintiffs cannot bring a breach of contract action because the Funding Agreement contemplates payment to the consultant hired to perform the RI/FS, and not to Plaintiffs. As parties to the contract, and as parties subject to injury for breach of the contract, Plaintiffs certainly can institute an action for its breach, regardless whether Tex Tin's payment obligations run directly to them or, instead, to a third-party. *See Snyder,* 860 S.W.2d at 695; *Bayfront Assocs., Ltd.,* 814 S.W.2d at 103. Finally, Defendants argue that, with regard to Associated in particular, no performance is owing because the Funding Agreement includes a provision relieving Associated of its obligations if a good faith dispute exists regarding Tex Tin's obligations under that agreement. The Court, however, cannot conclude from the Amended Complaint alone that a good faith dispute of this nature does in fact exist. Consequently, based on the entire discussion above, Defendants' Motion to Dismiss the breach of contract action for failure to state a claim upon which relief can be granted must be **DENIED.**[19]

### C. *Fraudulent Transfer Claim Against Steel Holdings Corporation*

The fraudulent transfer claim asserted against Steel Holdings, which is based on the same transfer forming the basis for the fraudulent transfer claims against Colin Benjamin, Stephan Eliel, and Salvatore Purpura, is governed by the Uniform Fraudulent Transfer Act ("UFTA"), Tex.Bus. & Com. Code Ann. §§ 24.001–.013 (Vernon 1987 & 1995 Supp.). *See supra* part II.C.3 (discuss-

---

**19.** In light of the foregoing, Plaintiffs are encouraged to submit a motion for summary judgment on their breach of contract claim against Tex Tin and Associated, if otherwise appropriate.

ing the choice-of-law issue regarding the fraudulent transfer claims asserted based upon the identical transaction). Under the UFTA, a transfer is fraudulent "if the debtor made the transfer ... (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer ..., and the debtor ... believed that the debtor would incur[ ] debts beyond the debtor's ability to pay." UFTA at § 24.005. As a remedy for creditors, the UFTA provides that a judgment may be entered against the first transferee of assets. *Id.* § 24.009(b)(1).

■ In the Amended Complaint, Plaintiffs aver that all of Associated's assets were transferred to Steel Holdings, without consideration, for the purpose of escaping liability under the Funding Agreement. Proof of these allegations, if coupled with proof of Associated's liability to Plaintiffs, would clearly support liability against Steel Holdings under the UFTA. The Court accordingly **DENIES** Defendant Steel Holdings' Motion to Dismiss the fraudulent transfer cause of action against it.

D. *Fraudulent Transfer and Common–Law Fraud Claims Against Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, the Estate of Franz Lissauer, Colin Benjamin, Stephan Eliel, and Salvatore Purpura*

The Motions to Dismiss the fraudulent transfer causes of action against Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, the Estate of Franz Lissauer, Colin Benjamin, Stephan Eliel, and Salvatore Purpura are **DENIED AS MOOT,** because the Court lacks personal jurisdiction over each of these Defendants. *See supra* part II.C; *supra* part II.E. The Motion to Dismiss the common-law fraud cause of action against Colin

Benjamin is also **DENIED AS MOOT** under the same rationale. *See supra* part II.C.

E. *Fraudulent Transfer Claim Against Donald Wefer*

■ The basis for the fraudulent transfer cause of action against Donald Wefer is a transfer of assets from Associated to Steel Holdings made with the intention of disabling Associated from meeting its Funding Agreement obligations. This claim cannot succeed under the facts averred in the Amended Complaint, because the applicable statute does not authorize the Court to enter judgment against an individual who never possessed the transferred assets nor benefitted from their transfer. *See* Uniform Fraudulent Transfer Act ("UFTA"), Tex.Bus. & Com.Code Ann. §§ 24.008–.009 (Vernon 1987 & 1995 Supp.) (contemplating liability only against "the first transferee of the asset," "the person for whose benefit the transfer was made," or a "subsequent transferee"); *see also supra* note 11 & accompanying text (concluding that the fraudulent transfer claim founded upon this transaction is governed by the UFTA); *cf. supra* part II.C.3 (finding under identical reasoning that the Amended Complaint fails to state a fraudulent transfer claim upon which relief can be granted against Stephan Eliel, Colin Benjamin, or Salvatore Purpura). Consequently, the Court must **GRANT** the Motion to Dismiss the fraudulent transfer cause of action asserted against Donald Wefer for failure to state a claim upon which relief can be granted.

F. *Fraud Claim Against Donald Wefer*

■ Plaintiffs aver that during negotiation of the Funding Agreement, Associated, through Donald Wefer and Colin Benjamin, represented its ability to guarantee Tex Tin's funding obligations despite knowledge that it could not. According to Plaintiffs, this representation induced them to enter into the Funding Agreement, as was anticipated by Defendants. Donald Wefer's participation in this occurrence forms the basis for Plaintiffs' common-law fraud claim against him.[20]

---

**20.** Under Texas law, Donald Wefer cannot be absolved from fraud liability based on his status as a corporate director or officer of Associated if such liability arises from his participation in the alleged fraud. *Penroc Oil Corp. v. Donahue,* 476

■ Texas law applies to Plaintiffs' common-law fraud claim against Donald Wefer, because Texas is clearly the state having the most significant relationship to the alleged fraud. *See supra* note 9 (explaining that this Court must resolve all choice-of-law issues under the approach contemplated by the Restatement (Second) of Conflict of Laws); *see also* Restatement (Second) of Conflict of Laws §§ 6, 145, 148; *cf. supra* note 11 (concluding that all fraudulent transfer claims are governed by Texas law); *supra* part III.B (concluding that the breach of contract claim is governed by Texas law). Under Texas law, the elements of fraud are: (1) the making of a material representation by the defendant; (2) falsity of the representation; (3) knowledge of the representation's falsity or reckless disregard for its truth; (4) intention of the defendant that the representation be relied upon by the plaintiff; (5) actual reliance upon the representation by the plaintiff; and (6) resulting injury to the plaintiff. *Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994). Defendants specifically challenge Plaintiffs' ability to prove damages.

■ Based on the allegations of the Amended Complaint, the Court cannot conclude that Plaintiffs are unable to demonstrate injury resulting from execution of the Funding Agreement. Even if Plaintiffs would have been jointly and severally liable to the EPA in the absence of the Funding Agreement, as Defendants contend, it remains uncertain whether Plaintiffs would have been entitled to contribution based on their liability to the EPA had the Funding Agreement not been executed. The Court, therefore, cannot conclude from the Amended Complaint alone that, absent the Funding Agreement, Plaintiffs' overall liability to the EPA and Defendants would have exceeded in amount the costs they actually incurred under the Funding Agreement. In other words, Plaintiffs may have suffered injury by entering into the Funding Agreement, de-

pending on the occurrence of circumstances not stated in the Amended Complaint or otherwise revealed to the Court. The Motion to Dismiss the common-law fraud claim asserted against Donald Wefer must accordingly be **DENIED.** However, the Court encourages the parties to submit motions for summary judgment on this claim, if appropriate.[21]

G. *Claims Asserting Liability Based on Disregard of the Corporate Entities of Tex Tin, Associated, Steel Holdings, Asoma Corporation, and/or MacSteel, Inc. Against Donald Wefer*

Defendants have attached supporting affidavits which pertain to their Motion to Dismiss for failure to state a claim upon which relief can be granted insofar as they seek dismissal of all claims against Donald Wefer predicated on the disregard of the corporate entities of Tex Tin, Associated, Steel Holdings, Asoma Corporation, and/or MacSteel, Inc. The Court does not exclude this evidence and, therefore, must apply the standard of review for motions for summary judgment. *See* Fed.R.Civ.P. 12(b). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Issues of material fact are genuine only if they require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513–14. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record]

S.W.2d 849, 851 (Ct. of Civ.App. of Tex.—El Paso 1972, writ denied).

**21.** The Court notes that Plaintiffs' proof of a single statement by Donald Wefer that Associated's financial stability had faltered, which was

made long after the making of the allegedly false representation, would, by itself, be insufficient to establish a genuine issue of fact regarding the scienter element of fraud.

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). To meet this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)). The nonmovant must produce evidence to supplement the pleadings on the issues for which that party bears the burden of proof at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment should be granted only if the evidence indicates that a reasonable fact-finder could not find in favor of the nonmoving party. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

■■■ The law of the states of incorporation of Tex Tin, Associated, Steel Holdings, Asoma Corporation, and MacSteel, Inc., which are New York, Texas, and Delaware, applies to determine whether the corporate entities of these Defendants can be disregarded to impose liability on Donald Wefer. *See* Restatement (Second) of Conflict of Laws §§ 307, 309; *see also supra* note 9 (explaining that this Court must utilize the Restatement (Second) of Conflict of Laws approach for choice-of-law issues). Under New York, Texas, and Delaware law, the liabilities of the corporation will not reach the directors, officers, or shareholders unless the corporate privilege has been abused, or the corporation has been dominated, for personal use. *See supra* part II.C.1. The evidence submitted by Defendants indicates that the corporate forms of the corporate Defendants have been respected and that their directors and officers act in the respective corporations' best interests only. *E.g.,* Benjamin Aff. ¶¶ 10, 14, 17, 20, 21; Purpura Aff. ¶ 6; Wefer Aff. ¶¶ 9, 10. In response, Plaintiffs have not produced any evidence that Donald Wefer abused the corporate privilege of any of the corporate Defendants for personal gain. Therefore, based on the present record, the Court cannot find that a reasonable finder of fact could conclude that the corporate entities of Tex Tin, Associated, Steel Holdings, Asoma Corporation, and/or MacSteel, Inc. should be disregarded to reach Donald Wefer. Consequently, the Motion to Dismiss all claims against Donald Wefer based on disregard of the corporate entity of one or more of the corporate Defendants is **GRANTED.**

H. *Claims Asserting Liability Based on Disregard of the Corporate Entities of Tex Tin, Associated, Steel Holdings, Asoma Corporation, and/or MacSteel, Inc. Against Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, the Estate of Franz Lissauer, Colin Benjamin, Stephan Eliel, and Salvatore Purpura*

The Motions to Dismiss all claims asserting liability based on disregard of the corporate entities of Tex Tin, Associated, Steel Holdings, Asoma Corporation, and/or MacSteel, Inc. against Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, Unknown Lissauer Family Members, the Estate of Franz Lissauer, Colin Benjamin, Stephan Eliel, and Salvatore Purpura are **DENIED AS MOOT,** because the Court lacks personal jurisdiction over each of these Defendants. *See supra* part II.C and part II.E.

### IV. Motion for a More Definite Statement

■■■ The Federal Rules of Civil Procedure do not contemplate the pleading of all relevant facts in intricate detail. *Mitchell v. E–Z Way Towers, Inc.,* 269 F.2d 126, 132 (5th Cir.1959); *see also* Fed.R.Civ.P. 8(a). If, however, "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," Rule 9(b) permits the party to "move for a more definite statement before interposing a

responsive pleading." Fed.R.Civ.P. 9(b); *see also Mitchell,* 269 F.2d at 132. In making such a motion, the moving party must "point out the defects complained of and the details desired." Fed.R.Civ.P. 9(b). A motion for a more definite statement may not be used as a substitute for discovery. *Mitchell,* 269 F.2d at 132.

 In the case at bar, Defendants complain specifically of the common-law fraud and the fraudulent transfer claims,[22] correctly noting that, with the exception of averments pertaining to scienter, the circumstances constituting fraud must be stated "with particularity." Fed.R.Civ.P. 9(b). As to the common-law fraud claims against Associated and Donald Wefer, the Court finds sufficient clarity in the Amended Complaint's averment that during negotiation of the Funding Agreement Donald Wefer and Colin Benjamin each misrepresented Associated's ability to guarantee Tex Tin's financial obligations under the Funding Agreement. As to the fraudulent transfer claim asserted against Steel Holdings, Defendants can certainly respond meaningfully to Plaintiffs' Amended Complaint, which avers a one-hundred percent depletion of Associated's assets into Steel Holdings. If such an event took place, Defendants would surely be familiar enough with its details to formulate an answer; otherwise, Defendants can simply deny its occurrence. As to all other common-law fraud and fraudulent transfer claims asserted in the Amended Complaint, the Motion for a More Definite Statement is **DENIED AS MOOT,** because the Court lacks personal jurisdiction over each and all of the Defendants against which those claims are asserted, and because the Amended Complaint fails to state a fraudulent transfer claim against Donald Wefer upon which relief can be granted. The Court, therefore, **DENIES** the Motion for a More Definite Statement of the fraud and fraudulent transfer claims.

### V. Motion to Strike

Having found no occasion to consider any attachments to Defendants' Supplemental Brief in addressing each of the currently pending Motions, all of which are fully resolved in this Order, the Court **DENIES AS MOOT** Plaintiffs' Motion to Strike various exhibits and affidavits attached to Defendants' Supplemental Brief.

### VI. Conclusion

For the reasons stated above:

The Motion to Dismiss for Lack of Personal Jurisdiction by Defendant Steel Holdings Corporation is **DENIED.** The Motion to Dismiss for Lack of Personal Jurisdiction by Defendant Donald Wefer is also **DENIED.**

The Motions to Dismiss for Lack of Personal Jurisdiction by Defendants Stephan Eliel, Colin Benjamin, Salvatore Purpura, Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, the Estate of Franz Lissauer, and Unknown Lissauer Family Members are **GRANTED.** Consequently, each and all claims asserted against one or more of these Defendants are hereby **DISMISSED WITHOUT PREJUDICE.**

The Motion to Dismiss the breach of contract claim against Defendants Tex Tin Corporation and Associated Metals and Minerals Corporation is **DENIED.**

The Motion to Dismiss the fraudulent transfer claim against Defendant Steel Holdings Corporation is **DENIED.**

The Motion to Dismiss the fraudulent transfer claim against Donald Wefer is **GRANTED.** Consequently, the fraudulent transfer claim asserted against Donald Wefer is hereby **DISMISSED WITHOUT PREJUDICE.**

The Motions to Dismiss the fraudulent transfer claims against Stephan Eliel, Colin Benjamin, Salvatore Purpura, Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, the Estate of Franz Lissauer, and Un-

---

22. Since the filing of this Motion, Plaintiffs have filed their Amended Complaint, which adds considerable clarity to the statement of the fraud and fraudulent transfer claims. The Court expresses no opinion in this Order as to whether the Motion for a More Definite Statement would have been granted had the Amended Complaint not been filed.

known Lissauer Family Members are **DENIED AS MOOT.**

The Motion to Dismiss the common-law fraud claims against Associated Metals and Minerals Corporation and Donald Wefer is **DENIED.**

The Motion to Dismiss the common-law fraud claim against Colin Benjamin is **DENIED AS MOOT.**

The Motion to Dismiss all claims against Donald Wefer predicated on disregard of the corporate entities of Defendants Tex Tin Corporation, Associated Metals and Minerals Corporation, Asoma Corporation, Steel Holdings Corporation, and/or MacSteel, Incorporated is **GRANTED.**

The Motions to Dismiss all claims against Stephan Eliel, Colin Benjamin, Salvatore Purpura, Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, the Estate of Franz Lissauer, and Unknown Lissauer Family Members predicated on disregard of the corporate entities of Defendants Tex Tin Corporation, Associated Metals and Minerals Corporation, Asoma Corporation, Steel Holdings Corporation, and/or MacSteel, Incorporated are **DENIED AS MOOT.**

The Motion for a More Definite Statement by Defendants Tex Tin Corporation, Associated Metals and Minerals Corporation, Asoma Corporation, Steel Holdings Corporation, MacSteel, Incorporated, Colin Benjamin, Donald Wefer, and Salvatore Purpura is **DENIED.**

Plaintiffs' Motion to Strike various exhibits and affidavits submitted by Defendants in connection with their Motions to Dismiss is **DENIED AS MOOT.**

In sum, the only causes of action now remaining are as follows: (1) a breach of contract claim against Tex Tin Corporation and Associated Metals and Minerals Corporation, for which Asoma Corporation, Steel Holdings Corporation and/or MacSteel, Incorporated may, in addition, be subject to liability under doctrines permitting disregard of the corporate entity; and (2) common-law fraud claims against Donald Wefer and Associated Metals and Minerals Corporation, for which Tex Tin Corporation, Asoma Corporation, Steel Holdings Corporation and/or MacSteel, Incorporated may, in addition, be subject to liability under doctrines permitting disregard of the corporate entity.

The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** not to file anything further on these issues in this Court, including motions to reconsider or the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled from the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

**DONE.**

### *PARTIAL FINAL JUDGMENT*

For the reasons set forth in the Order issued by the Court this date, the Court **GRANTS** the Motions to Dismiss for Lack of Personal Jurisdiction by Defendants Stephan Eliel, Colin Benjamin, Salvatore Purpura, Diana Lissauer, Emil Lissauer, Gordon Lissauer, Sharon Lissauer, Hannah Hirschfeld, Peter Eliel, the Estate of Franz Lissauer, and Unknown Lissauer Family Members. Consequently, each and all claims asserted against these Defendants are hereby **DISMISSED WITHOUT PREJUDICE.**

All parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**

**DONE.**