## In re ABSOLUTE RESOURCE CORP., Debtor.

### Absolute Resource Corp., Plaintiff,

### v.

### Hurst Trust, Banc One Leasing Corp., Zurich Investment Group, Ltd., Joseph C. Hurst, Sr., Alma Marcella Hurst, Tom Walker, and Robert E. Keaveny, Defendants.

No. 3:94–32263–SAF–11.
Adversary No. 3:96–3497.
Civ. No. CV–1361–T.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 25, 1999.

---

Steven A. Felsenthal, Chambers of Judge Steven Felsenthal, Dallas, TX, Pro se.

Mark H. How, Short How Frels & Heitz, Pieter J. Tredoux, Law Office of Pieter J. Tredoux, Dallas, TX, for Absolute Resource Corp., appellants.

Jim L. Flegle, Scott R. Roberts, Bracewell & Patterson, Dallas, TX, for Banc One Leasing Corp, Robert E. Keaveny, defendants.

Michael Anthony Dover, Law Office of William L. Wolf, Dallas, TX, for Hurst Trust et al., Zurich Investment Group, Inc., Zurich Investment Group, Ltd., Tom Walker, appellees.

ORDER GRANTING SUMMARY JUDG-
 MENT AND DECLARING MOOT
 MOTION TO STRIKE PLAIN-
 TIFF'S SUMMARY JUDGMENT
 RESPONSES AND OBJECTIONS
 TO PLAINTIFF'S SUMMARY
 JUDGMENT EVIDENCE

MALONEY, District Judge.

Before the Court are the Motion for Summary Judgment, Objections to Absolute's Summary Judgment Evidence, and the Motion to Strike Absolute's Summary Judgment Responses and Evidence with Supplemental Objections to Absolute's Summary Judgment Evidence, filed by Defendants Banc One Leasing Corporation and Robert E. Keaveny. The motions are opposed. After consideration, the Court believes that summary judgment should be granted to Defendants Banc One Leasing Corporation and Robert E. Keaveny, and accordingly, that the remaining motions are moot.

Plaintiff Absolute Resource Corporation was established by Michael Jenkins and Dale Isaacs to purchase and develop land in Missouri for mining mineral resources. Jenkins was, at all times relevant to this case, the President, Chief Executive Officer, and Director of Absolute. In October of 1992, Absolute acquired 80 acres of property in Missouri. This property was the principal asset of Absolute. In 1994, Plaintiff sought additional financing to enable it to develop the Missouri property. Early in 1994, Jenkins was introduced to Defendant Tom Walker, an officer in Defendant Zurich Investment Group, Ltd. Walker referred Jenkins to Defendant Robert Keaveny. Keaveny was a Vice President of Defendant Banc One Leasing Corporation. Banc One is a national commercial finance company that specializes in equipment leasing loans. In the summer of 1994, Plaintiff and Keaveny began negotiations for Defendant Banc One to lend $2.5 million to Absolute.

In part through the efforts of Defendants Walker and Zurich[1], on July 12, 1994, Keaveny submitted a proposal letter, or letter agreement, to Plaintiff which outlined the terms and conditions of a $2.5 million dollar "plus or minus 5%" loan from Banc One to Absolute. Plaintiff claims that this letter was a binding contract for Banc One to lend money to Absolute, while Defendants Banc One and Keaveny contend that it was merely a proposal, subject to, among other things, approval by senior Banc One officers and due diligence by Banc One. The July 12, 1994, letter provided, *inter alia*, a closing date of August 15, 1994, and that upon acceptance of the proposed terms, Absolute tender a $25,000 deposit to Banc One by July 15, 1994. The deposit was refund-

able if Banc One did not ultimately approve the loan. The July 12, 1994, letter was signed by Jenkins on behalf of Absolute, and Keaveny on behalf of Banc One. Absolute paid the $25,000 to Banc One by check dated July 13, 1994.

Although not provided for in the July 12, 1994, letter, Keaveny told Absolute that Banc One would require third party financing in the form of an irrevocable letter of credit to secure the principal and interest payments of Absolute pursuant to the terms outlined in the July 12, 1994, letter. Plaintiff also claims that Keaveny represented that Banc One would lend Absolute an additional $2.5 million to be used by Absolute as working capital, which would also require third party security. According to Plaintiff, Keaveny represented that Banc One would procure the third party source. Thereafter, Keaveny introduced Jenkins to Defendant Joseph C. Hurst, Sr., one of the trustees of Defendant Hurst Trust. It appears from the summary judgment evidence that Absolute and the Hurst Trust, through their agents Jenkins and Joseph C. Hurst, Sr., entered into an agreement for the Hurst Trust to provide an irrevocable letter of credit to secure Banc One's loan to Absolute, in exchange for an ownership interest in Absolute.[2] On or about August 5, 1994, Keaveny informed Jenkins that Absolute should pay its $25,000 deposit to the Hurst Trust rather than to Banc One. Absolute complied by sending a check dated August 5, 1994, to the Hurst Trust in the amount of $25,000.

On September 2, 1994, Keaveny sent a letter to Jenkins informing him that the Hurst Trust had been approved for a $100 million loan from a "major Financial Institution in the U.K." According to the letter,

---

**1.** Plaintiff entered into confidential fee agreements with both Defendant Zurich and Defendant Walker in compensation for referring Jenkins to Keaveny, and facilitating Banc One's proposed loan to Absolute. These agreements have no bearing on the resolution of the motions before the Court.

**2.** The issue of the validity, or even the existence of a contract between the Hurst Trust

and Absolute is not relevant to the resolution of the motions before the Court. As such, nothing in this order should be construed as a finding relating to a contract between the Hurst Trust and Absolute, or Joseph C. Hurst, Sr. and Absolute. The Court is merely reciting the facts of the case as they appear from the summary judgment evidence submitted by Plaintiff and Defendants Keaveny and Banc One.

Joseph Hurst, Sr. was travelling to London to finalize the transaction, and Keaveny was planning to accompany him to "speed along the financing of your [Absolute's] request." The letter also stated: "We are contemplating a funding on Thursday the 8th of September.... I hope this letter will serve as notice that the deal is real and we will fund next week." For reasons that are not entirely clear from either party's motion papers, Banc One's loan to Absolute did not close on September 8, 1994.

Plaintiff claims that Keaveny made numerous oral representations to Absolute throughout late 1994 and early 1995 that Banc One would eventually lend it the money it requested. According to Plaintiff, in early 1995, Keaveny represented that Banc One would make the loan without the support of the Hurst Trust. On two separate occasions, March 20, 1995, and July 23, 1995, Plaintiff paid $5,000 to Keaveny as reimbursements for expenses incurred in attempting to finalize the loan transaction. Plaintiff claims that Keaveny continued to represent that Banc One would lend Absolute at least $5 million throughout the spring and summer of 1995. Plaintiff claims that Keaveny made these representations to corporate officers of Absolute as well as to various investors in Absolute.

On July 10, 1995, Banc One submitted a second loan proposal to Absolute, this time for an $11 million loan to close on October 15, 1995.[3] Soon after, Keaveny sent an undated letter to Jenkins which explained that he was in the process of structuring a transaction that was similar to the proposed Absolute deal. The letter states that an independent investor, who was a customer of Banc One, had "committed to provide a Letter Of Credit to support your loan request." The letter also states: "I expect to close the first transaction in the next week, with your deal to follow." Plaintiffs contend that the undated let-ter—which appears from the summary judgment evidence to have been sent in August of 1995—was a binding commitment by Banc One to lend to Absolute.

Plaintiff claims that Keaveny made further oral representations to Absolute's officers and investors following the July 10, 1995, loan proposal and the undated letter, that Banc One would lend to Absolute. However, the loan was never made. Plaintiff claims that, in reliance upon Keaveny's and Banc One's continued representations that they would lend at least $5 million to Absolute, Absolute expended vast amounts of money and entered into untenable contracts that eventually forced it to file for bankruptcy on April 4, 1996. Plaintiff filed this suit on September 9, 1996, bringing claims for: (1) fraud; (2) breach of contract; (3) beach of the duty of good faith and fair dealing; (4) negligent misrepresentation; (5) conspiracy to defraud; (6) promissory estoppel; (7) specific performance; and (8) declaratory judgment.

### Motion to Strike Plaintiff's Summary Judgment Responses and Objections to Plaintiff's Summary Judgment Evidence

■ Defendants Banc One and Keaveny correctly point out that Plaintiff's summary judgment motion papers and supporting affidavits do not comply with numerous Local Rules of the Court. See, e.g., Local Rule 56.5; 56.6. Although Plaintiff's violations of the technical requirements for motion papers and appendices are annoying, the lack of citations to the appendix for numerous assertions is more troubling. It is axiomatic that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 457 (5th Cir.1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16, n. 7 (5th Cir.1992)). Of course, where Plaintiff makes sweeping arguments without record

---

**3.** The record contains only the first page of the July 10, 1995, proposal letter. Neither party offers any explanation for the where-abouts or substance of the missing pages of the letter.

citation, and the Court does not find support for the arguments in the record, the Court cannot credit the arguments. However, since the Court believes that summary judgment should be granted to Keaveny and Banc One as matter of law for the reasons that follow, the motion to strike Plaintiff's summary judgment responses is moot.

Defendants Keaveny and Banc One also object to portions of the affidavits submitted by Plaintiff for evidentiary defects and for alleging facts not disclosed in discovery. While these objections appear to have some merit, the Court believes summary judgment should be granted to Keaveny and Banc One even if the Court overlooks these defects. Therefore, the objections are also moot.

## Summary Judgment

Summary judgment should be entered only when the record establishes that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant bears the burden of establishing the propriety of summary judgment, and all pleadings and evidence are viewed in the light most favorable to the nonmovant. *Melton v. Teachers Ins. & Annuity Ass'n of America*, 114 F.3d 557, 559 (5th Cir.1997).

■ Once a properly supported motion for summary judgment has been made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law will determine what facts are material. *Id.* A dispute as to a material fact is "genuine" under Rule 56(c) only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to preclude a grant of summary judgment. *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir.1999) (citations omitted). Summary judgment is also appropriate when the only issues to be

decided in the case are issues of law, or when the non-moving party's claims are legally deficient. *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1065 (5th Cir. 1995); *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1257 (5th Cir.1995).

## Fraud

■ In order to establish a claim for fraud under Texas law, the plaintiff must show that: (1) a material representation was made; (2) it was false; (3) the speaker knew it was false when made or that the speaker made it with reckless disregard of the truth; (4) the speaker intended for it to be relied upon; (5) the plaintiff acted in justifiable reliance upon it; and (6) the plaintiff was injured by it. *See Jackson v. Speer*, 974 F.2d 676, 679 (5th Cir.1992); *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex.1992).

It is difficult for the Court to discern from Plaintiff's conclusory allegations exactly what evidence is relied upon by Plaintiff to support its fraud claim against Defendants Keaveny and Banc One. It appears that Plaintiff relies upon the following summary judgment evidence: (1) the July 12, 1994, letter, signed by Defendant Keaveny as a representative of Banc One, and Jenkins as a representative of Absolute; (2) the September 2, 1994, letter from Keaveny at Banc One to Jenkins at Absolute; (3) the July 10, 1995, first page of a financing proposal; (4) the undated letter from Keaveny at Banc One to Jenkins at Absolute; and (5) unspecified oral assurances by Keaveny to Jenkins.

■ Much of the summary judgment evidence upon which Plaintiff relies does not show any representations by Keaveny or Banc One of existing material fact. Most of Keaveny's statements are, at most, predictions or opinions as to the future outcome of the Absolute transaction. A statement of opinion with regard to future events can constitute fraud only if the speaker knows that it is false, and purports to have special knowledge of future events. *Clardy Mfg. Co. v. Marine Mid-*

*land Bus. Loans, Inc.*, 88 F.3d 347, 359–60 (5th Cir.1996) (citations omitted). A promise of future performance constitutes fraud " 'only when made with the intention, design and purpose of deceiving, and with no intention of performing the act' " *Id.* (quoting *Airborne Freight Corp. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 294 (Tex. App.—El Paso 1992, *writ denied* )). Plaintiff does not offer any evidence that establishes a fraud claim because Plaintiff has presented no evidence: (1) that Keaveny knew that any of his representations were false when he made them; or (2) that either Keaveny or Banc One had no intention of ever lending to Absolute when the representations were made; or (3) that Keaveny had any special knowledge bearing on whether the Absolute loan transaction would be completed.

The July 12, 1994, letter contains neither representations of existing fact nor opinions as to the happening of a future event. The letter is unambiguously a proposal letter. The language of the letter includes, *inter alia:*

> Banc One Leasing Corporation is pleased to submit the following true tax lease proposal for your clients' consideration.
>
> \* \* \* \* \* \*
>
> If Lessor fails to approve the proposed transaction the deposit will be refunded in full to the Lessee without interest. If the Lessor approves the proposed transaction, the deposit shall be deemed fully earned.
>
> \* \* \* \* \* \*
>
> PROPOSAL ONLY: This letter is not a commitment to undertake this financing. A commitment can be issued only after full credit and economic review and subsequent approval by the appropriate officers of the Lessor.

Furthermore, above the signature lines, the letter states "PROPOSAL SUBMITTED," and "PROPOSAL ACCEPTED." Clearly, this letter contains no fraudulent representations.

■ The September 2, 1994, letter from Keaveny to Jenkins does contain some representations and opinions as to future events. Keaveny wrote that he reviewed a fax that had been sent to the Hurst Trust from a financial institution in the United Kingdom, the import of which was that the financial institution had approved a $100 million loan to the Hurst Trust. Keaveny also wrote:

> I am planning to travel to London with Mr. Hurst to speed along the financing of your request. At this time we are contemplating a funding on Thursday the 8th of September.
>
> \* \* \* \* \* \*
>
> I hope this letter will serve as notice that the deal is real and we will fund next week.

Plaintiff's conclusory allegations notwithstanding, the summary judgment evidence contains nothing that shows that a financial institution had not approved a loan to the Hurst Trust, or that Keaveny was not planning to accompany Mr. Hurst to London. The second two statements are predictions or promises of future performance. Plaintiff has presented no evidence that Keaveny and Banc One had no intention of performing in the future, or that they knew the statements were false when they were made and that they had special knowledge relating to Banc One's intention to lend to Absolute. The ultimate failure of Keaveny or Banc One to perform is no evidence of intent not to perform when the promise was made. *Clardy Mfg. Co.*, 88 F.3d at 360 (citations omitted).

It appears from the first page of the July 10, 1995, letter, which outlines the terms of an $11 million loan to Absolute, that it is in the same format as the July 12, 1994, letter. It begins with the sentence "Banc One Leasing Corporation is pleased to submit the following debt financing proposal for your consideration." For the same reasons that applied to the July 12, 1994, letter, the July 10, 1995, letter does not evidence fraud on the part of Keaveny or Banc One.

Plaintiff mischaracterizes the language in the undated letter from Keaveny to

Jenkins in its fraud allegations. Keaveny wrote "I am in the process of completing a transaction similar to your request." Keaveny then described the structure of the "similar" transaction, which involved a borrower obtaining a letter of credit from an outside investor, confirmed by Chase Manhattan Bank, to secure the principal and interest payments to the primary lender, Banc One. Keaveny opined that this arrangement would eliminate the credit risk to Banc One. Keaveny never represented that he possessed a letter of credit confirmed by Chase Manhattan Bank, or any other entity, to secure the Absolute loan. The only statements in the undated letter that directly pertain to the Absolute transaction are: "I have confirmed with the investor after your meeting that he has committed to provide a Letter Of Credit to support your loan request." and "I expect to close the first transaction in the next week, with your deal to follow." Plaintiff points to nothing in the summary judgment evidence that shows that the first statement was false. The second statement is a prediction of future performance. As with Keaveny's other statements, Plaintiff offers no evidence to show that Keaveny knew that Banc One would not lend to Absolute when he wrote this letter, that he or Banc One did not intend to lend to Absolute when he wrote the letter, or that he had special knowledge relating to Banc One's intent to lend to Absolute. Therefore, the undated letter contains no evidence of fraud.

Plaintiff also makes vague reference—without citation to the record—to oral representations by Keaveny that Banc One would lend at least $5 million to Absolute. Putting aside the fact that the Court should not have to sift through the summary judgment evidence to find support for Plaintiff's case, *see Ragas*, 136 F.3d at 457, it seems that Plaintiff relies upon the affidavit of Michael D. Jenkins and the deposition of Bert Nelson. The Jenkins affidavit refers to two separate instances where Keaveny allegedly made oral representations to Jenkins. The first was at a restaurant in the Fall of 1994. Jenkins claims "Keaveny repeated to all concerned that Banc One would provide the Debtor with $5 million in financing." In the second instance, at the offices of Absolute in April of 1995, Keaveny allegedly "represented to the Debtor [Absolute] that Banc One would provide the debtor with financing in the amount of $5 million to fund its operations." Nelson, who was also at the meeting at the restaurant, stated in his deposition that Keaveny "expressed very strong confidence and assurances that the loan would be closed shortly," and that "Keaveny's general comments were that the deal should close in a few days." Of course, all of these alleged representations by Keaveny are opinions or predictions of future performance. Because of the dearth of evidence discussed above, these statements would not permit a reasonable trier of fact to conclude that Keaveny or Banc One acted fraudulently.

Finally, Plaintiff's claim for fraud must be dismissed for an additional reason. Fraud requires a showing of justifiable, not just actual, reliance upon the defendants' representations. *Clardy Mfg. Co.*, 88 F.3d at 360 (citations omitted). There must be a reasonable relationship between the representations and the extent of the plaintiff's reliance. *Id.* at 358 (citation omitted). As a matter of law, the Court cannot find that Absolute's alleged reliance—which included buying new property in Missouri, expanding existing operations, and incurring high-interest short term debt that eventually bankrupted the company—was justified by facially non-binding proposal letters and oral assurances that a deal would eventually close. Over a thirteen month period, Plaintiff could have sought a different source of financing, or in the alternative, proceeded more conservatively with its business operations until a loan was obtained. Instead, Plaintiff chose to rely solely on the hope that the Banc One loan would be finalized, and to overextend its business to the point that it was nonviable if the loan was not approved. A plaintiff's reliance is not justifiable if it amounts to negligence. *Id.*

Therefore, the Court believes that summary judgment should be granted to Defendants Keaveny and Banc One on Plaintiff's fraud claim.

### Negligent Misrepresentation

 Under Texas law, the elements of negligent misrepresentation are: (1) a representation made by the defendant in the course of his business or in a transaction in which he has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Clardy Mfg. Co.*, 88 F.3d at 357 (citing *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991)) (further citations omitted). The false information supplied by the defendant must be a "misstatement of existing fact." *Id.* (citing *Airborne Freight Corp.*, 847 S.W.2d at 294). "Negligent misrepresentation does not occur when a defendant simply makes a guess as to a future unknown event." *Sergeant Oil & Gas Co., Inc. v. National Maintenance & Repair, Inc.*, 861 F.Supp. 1351, 1360 (S.D.Tex.1994); *see also Clardy Mfg. Co.*, 88 F.3d at 357 (citing same).

 In the *Clardy Mfg. Co.* case, the United States Court of Appeals for the Fifth Circuit explained exactly what sort of representation a lender must make to support a claim for negligent misrepresentation. It is clear from the *Clardy Mfg. Co.* case that Keaveny and Banc One's representations are not actionable under a theory of negligent misrepresentation. In order to support a claim for negligent misrepresentation, the lender must actually represent that the loan has been approved. *Clardy Mfg. Co.*, 88 F.3d at 357 (citing *Sloane*, 825 S.W.2d at 441–42). Representations by the defendant lender that they "expected a letter of commitment to be issued within the next two to five days," that plaintiff "would have a commitment letter by Friday or the following Monday or Tuesday," that "from [the lender's] point of view everything looked good," or that the loan was a "done deal," are not sufficient. *Id.* (citing in part *5636 Alpha Road v. NCNB Texas Nat'l Bank*, 879 F.Supp. 655, 665 (N.D.Tex.1995)). Keaveny's representations, recited in the previous section, are akin to those described in *Clardy Mfg. Co.*[4] They are not misrepresentations of existing fact—at most they are predictions as to the future actions of Banc One that did not turn out to be correct.[5] *See id.* Also, as was discussed

---

4. In addition to the representations of Keaveny recounted in the Court's analysis of the fraud claim, Plaintiff purports to rely on the affidavits of Donald E. Cagle, M.D., Ted W. Ledet, M.D., and C. Winston Bolinger, M.D., Charles B. Yeargan, Phd., and Frank L. Constantino, all of whom were investors in Absolute. All of these affidavits allege that Keaveny made various representations to the affiants. As an initial matter, the Court is not at all convinced that Plaintiff has any standing to rely upon these alleged representations, since they were not made to Plaintiff, and Plaintiff has offered no evidence that it relied upon these statements. However, the Court does not need to reach this issue since all of the representations of Keaveny alleged in these affidavits are substantially similar to those already recounted—that is, they are predictions or opinions that Banc One's loan to Absolute would close imminently.

5. In all of the summary judgment evidence, only the one paragraph affidavit of Larry A. Peterson alleges that Keaveny represented that the loan to Absolute had been approved. However, the Court does not believe this evidence is sufficient to defeat summary judgment. First of all, Plaintiff does not purport to rely on this affidavit, does not refer to it in any way in its motion papers, and does not even bother to inform the Court who Peterson is. Second, the affidavit is quintessentially conclusory, and therefore does not constitute "substantial evidence" to create a jury question. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc); *see Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790, 798 (5th Cir.1992) (Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence); *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir.1986) (Conclusory allegations supported by a conclusory affidavit will not suffice to

above, Plaintiff has offered no evidence to show that Keaveny did not believe, or was reckless to believe what he said at the time he made the representations. *See id.*

Additionally, a plaintiff asserting negligent misrepresentation must show justifiable reliance upon the defendant's representation. *Clardy Mfg. Co.,* 88 F.3d at 358 (citation omitted). As was discussed above, the Court concludes as matter of law that Absolute's reliance on the statements of Keaveny and Banc One was not justified. Therefore, summary judgment should be granted to Defendants Keaveny and Banc One on Plaintiff Absolute's claim for negligent misrepresentation.

### Breach of Contract

■ As with most of Plaintiff's claims, it is difficult for the Court to determine which summary judgment evidence Plaintiff relies upon to support its breach of contract claim. Plaintiff makes vague reference to oral agreements to lend money to Absolute. As an initial matter, the Court notes that the Texas statute of frauds requires agreements to loan money to be in writing to be enforceable. Tex. Bus. & Comm.Code § 26.02 (West 1999). Therefore, the Court will not credit Plaintiff's allegations of an oral contract.

■ To state a cause of action for breach of contract, Plaintiffs must first prove the existence of a contract. *See, e.g., Amoco Chem. Co. v. Tex Tin Corp.,* 925 F.Supp. 1192, 1206 (S.D.Tex.1996). Under Texas law, the elements of a breach of contract claim are: (1) the existence of a contract between plaintiff and defendant; (2) the creation of duties under the contract; (3) a breach of a duty by defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Id.* The four documents that Plaintiff claims evidence a binding contract are: (1) the July 12, 1994, letter; (2) the September 2, 1994, letter; (3) the July 10, 1995, letter; and (4) the undated letter. As a matter of law, none

of these documents creates a binding contract.

■ The express language of the July 12, 1994 letter, unambiguously indicates that it is a proposal letter only. Since the document clearly states "This letter is not a commitment to undertake this financing," Plaintiff's contentions that it somehow bound Banc One to lend $5 million to Absolute are difficult to understand. The September 2, 1994, letter also does not evidence a contractual obligation on the part of Banc One. This letter contains mere statements of opinion and predictions of future events, which do manifest an intent to be bound. *National By-Products, Inc. v. United States,* 186 Ct.Cl. 546, 405 F.2d 1256, 1263 (1969); *see* Calamari & Perillo, *The Law of Contracts* § 2–6(b) (3d ed.1987). In any case, the statements in this letter—that "we are contemplating a funding," and "the deal is real and we will fund next week,"—are not sufficiently definite to result in an enforceable agreement. *See Douglass v. Panama, Inc.,* 504 S.W.2d 776, 778 (Tex.1974). Clearly, in such a complicated transaction between sophisticated parties, many material terms had yet to be negotiated and agreed upon. At most, this is a letter of intent, which generally does not result in an enforceable contract. *See Birenbaum v. Option Care, Inc.,* 971 S.W.2d 497, 505 (Tex.App.—Dallas 1997, *writ denied*); *Southwest Realty, Ltd. v. Daseke,* 1991 WL 83961, at *1 (N.D.Tex. April 12, 1991). The July 10, 1995, letter, like the July 12, 1994, letter, contains language that clearly identifies it as a proposal. For the same reasons, it does not form a binding contract. The only statement in the undated letter that could conceivably support a contract claim is "I expect to close the first transaction in the next week, with your deal to follow." Like the statements in the September 2, 1994, letter, this statement is merely a prediction or opinion that is too

require a trial); *Broadway v. Montgomery,* 530 F.2d 657, 660 (5th Cir.1976) (Nonmovant's affidavit reciting unsupported, conclusory al-

legations is insufficient to avoid summary judgment.)

indefinite to result in an enforceable agreement. Accordingly, summary judgment should be granted to Defendants Keaveny and Banc One on the contract claim.

### Breach of the Duty of Good Faith and Fair Dealing, Fiduciary Duty

Plaintiff alleges a breach of the duty of good faith and fair dealing by Defendants Keaveny and Banc One pursuant to section 1.203 of the Texas Business and Commerce Code, and Texas common law. Primarily, Plaintiff has not adequately alleged, and the Court is not convinced, that the controversy in this case is governed by this section of the Texas Business and Commerce Code. Regardless, the Court does not have to engage in this analysis, since there is no independent cause of action for failure to act in good faith under section 1.203. *See, e.g., Central Savings & Loan Ass'n v. Stemmons Northwest Bank, N.A.,* 848 S.W.2d 232, 239 (Tex.App.—Dallas 1992, *no writ*). Additionally, Texas does not recognize a common law duty of good faith and fair dealing between a lender and borrower. *Hall v. RTC,* 958 F.2d 75, 79 (5th Cir. 1992); *FDIC v. Coleman,* 795 S.W.2d 706, 708–09 (Tex.1990). Therefore, Plaintiff's claims for breach of the duty of good faith and fair dealing should be dismissed.

Defendants Keaveny and Banc One correctly point out that Plaintiff has not explicitly pleaded a claim for breach of fiduciary duty. However, since pleadings are to be construed liberally so as to do substantial justice, *see Heimann v. National Elevator Indus. Pension Fund,* 187 F.3d 493, 509 (5th Cir.1999), the Court will consider the breach of fiduciary duty claim. Lenders and their agents ordinarily have no fiduciary duty to borrowers or putative borrowers. *Cogan v. Triad American Energy,* 944 F.Supp. 1325, 1329 (S.D.Tex.1996) (citing *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962)) (citations omitted). In order to prove that a fiduciary relationship does exist in such a context, the plaintiff must show extraordinary circumstances such as excessive control and influence by the lender on the borrower's business activities. *Greater Southwest Office Park, Ltd. v. Texas Commerce Bank Nat'l Ass'n,* 786 S.W.2d 386, 391 (Tex. App.—Houston 1990, *writ denied*). Mere subjective trust by the borrower or evidence of prior dealings is not sufficient. *Id.* (citing *Thigpen v. Locke,* 363 S.W.2d at 253.); *Consolidated Bearing and Supply Co., Inc. v. First Nat'l Bank at Lubbock,* 720 S.W.2d 647, 649 (Tex. App.—Amarillo 1986, *no writ*). The course of negotiations between Plaintiff and Banc One do not amount to a fiduciary relationship. Keaveny did no more than express optimism that the Absolute financing would close. Plaintiff's subjective trust and hope—and reliance thereon—that Banc One's approval of their loan was just around the corner does not transform an arms-length transaction into a fiduciary relationship. Plaintiff has alleged nothing and offered no evidence to show the existence of or the breach of a fiduciary duty, and accordingly, summary judgment for Defendants Keaveny and Banc One is appropriate.

### Promissory Estoppel

The requirements for a promissory estoppel claim in Texas are: (1) a promise; (2) the foreseeability that the promise will be relied upon by the promisee; and (3) substantial reliance by the promisee to his detriment. *Clardy Mfg. Co.,* 88 F.3d 347, 360 (citing *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983)). Texas also requires an independent "definite finding that injustice can be avoided only by the enforcement of the promise." *Id.* (citation omitted). Additionally, the person seeking to enforce the promise must show that his reliance thereon was justified. *Id.* (citation omitted).

The only statements by Keaveny or Banc One in the summary judgment evidence that could arguably be a promise are in the September 2, 1994, letter: "[W]e are contemplating a funding on Thursday the 8th of September.... I hope this letter will serve as notice that the deal is real and we will fund next week." Regardless

of whether these statements constitute a promise sufficient to support a claim for promissory estoppel, for the reasons set out previously, the Court concludes as a matter of law that Plaintiff has not shown reasonable or justifiable reliance on this alleged promise. *See id.* (citation omitted) Therefore, Plaintiff's claim for promissory estoppel should be dismissed.

### Conspiracy to Defraud

A claim for conspiracy requires: (1) one or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex.1996) (citations omitted). Merely proving intent to engage in the conduct that caused the plaintiff harm is not sufficient. *Id.* (citation omitted). Plaintiff must prove specific intent on the part of Keaveny and Banc One to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Id.* Plaintiff has produced no evidence to show such an intent on the part of Defendants Keaveny and Banc One. Therefore the claim for conspiracy to defraud should be dismissed.

### Specific Performance and Declaratory Judgment

Plaintiff brings claims for specific performance and a declaratory judgment in its complaint, but does not address or defend them in its motion papers. Specific performance is a remedy for breach of a contract. Since the Court has found that no contract exists, this remedy is unavailable. *See, e.g., Campbell v. Northwestern Nat'l Life Ins. Co.*, 573 S.W.2d 496, 498 (Tex.1978) (citation omitted).

Declaratory relief should be granted when the judgment would serve a useful purpose in clarifying and settling the legal relations at issue in the case, and when it would terminate or provide relief from the uncertainty and controversy underlying the case. *See Concise Oil & Gas Partnership v. Louisiana Intrastate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir.1993)

(citation omitted). Plaintiff has pointed to nothing, and the Court does not see anything in the summary judgment evidence that would indicate that a declaratory judgment is warranted in this case.

It is therefore **ORDERED** that the Motion for Summary Judgment filed by Defendants Robert E. Keaveny and Banc One Leasing Corporation on May 21, 1999, is **granted.**

It is **FURTHER ORDERED** that the Objections to Absolute's Summary Judgment Evidence, filed by Defendants Robert E. Keaveny and Banc One Leasing Corporation on June 29, 1999, is declared **moot.**

It is **FURTHER ORDERED** that the Motion to Strike Absolute's Summary Judgment Responses and Evidence with Supplemental Objections to Absolute's Summary Judgment Evidence, filed by Defendants Robert E. Keaveny and Banc One Leasing Corporation on July 16, 1999, is declared **moot.**

### *INTERLOCUTORY JUDGMENT*

This action came before the Court, Honorable Robert B. Maloney, presiding, and the issues having been duly considered and a decision having been rendered:

It is **ORDERED** and **ADJUDGED** that the claims of Plaintiff Absolute Resource Corporation against Defendants Banc One Leasing Corporation and Robert E. Keaveny are **dismissed with prejudice.**