Reversed and Remanded in Part, Affirmed in Part, and Majority and
Concurring and Dissenting Opinions filed November 23, 2005













Affirmed in Part, Reversed and Remanded in Part, and
Majority and Concurring and Dissenting Opinions filed November 23, 2005.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00844-CV

____________

 

1001 McKINNEY LTD., Appellant

 

V.

 

CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL,

CREDIT SUISSE FIRST BOSTON LLC, SITUS, INC., 

SITUS CAPITAL SERVICES, INC., SITUS REALTY SERVICES, INC., 

AND SITUS SERVICING, INC., Appellees

_______________________________________________________________________

 

On Appeal from the 165th District Court

Harris County,
Texas

Trial Court Cause No. 01-62097

_______________________________________________________________________

 

C O N C U R R I N G   A N D   D I S S E N T I N G   O P I
N I O N








The statute of frauds bars any recovery by 1001
McKinney Ltd. (the ABorrower@) against
Credit Suisse First Boston Mortgage Capital (the ALender@)[1]
and Credit Suisse First Boston LLC[2]
(the ALender=s Parent@) on the
alleged oral contract, but not for the reasons stated in the majority
opinion.  The court correctly affirms the
summary judgment in favor of the Lender and the Lender=s Parent
(collectively, the ACredit
Suisse Parties@) on the Borrower=s claims alleging
breach of an alleged oral contract, statutory fraud, negligent
misrepresentation, conspiracy, and promissory estoppel.  The court also correctly concludes that,
because the Borrower=s
statutory fraud, negligent misrepresentation, and conspiracy claims arise from
the alleged oral loan agreement, the trial court did not err in entering
summary judgment on these tort claims. 
But the court errs in concluding there is a fact issue as to whether the
Borrower=s claimed
reliance on the alleged fraudulent representations of the Credit Suisse Parties
was justifiable.  Therefore, the court
should not reverse and remand the part of the Borrower=s
common-law fraud claim that seeks out-of-pocket damages.  Instead, the court should affirm the trial
court=s judgment
in all respects.  

I.  Contract Claims Against the
Lender=s Parent

The court reaches the correct result in
determining that the Borrower=s
contract claim is unenforceable based upon section 26.02(b) of the Texas Business
and Commerce Code, but the majority=s
analysis is flawed in some respects.

A.        The Borrower waived
its objections to the summary-judgment proof.








The majority addresses the merits
of the Borrower=s
objections to the affidavit of Thomas Zingalli, a Director in the Controller=s
Division of the Lender=s Parent,
and the documents described in his affidavit. 
With one exception, it is unnecessary to reach the Borrower=s
arguments regarding the alleged inadmissibility of the summary-judgment proof
because under this court=s
precedent, the asserted objections were waived when the Borrower failed to
secure rulings on them.  See Nowak v.
DAS Invest. Corp., 110 S.W.3d 677, 679 (Tex. App.CHouston
[14th Dist.] 2003, no pet.) (stating objection to summary-judgment affidavit
waived by failure to obtain ruling.)  The
exception is the objection that the Zingalli affidavit is conclusory.  Though no objection was needed to preserve
this issue for appellate review,[3]
it has no merit.  The Zingalli affidavit is clear and
specific and gives the factual foundation for the matters stated.  It is not conclusory.  See Hou-Tex, Inc. v. Landmark
Graphics, 26 S.W.3d 103, 112 (Tex.
App.CHouston
[14th Dist.] 2000, no pet.) (holding summary-judgment affidavit was not conclusory).  The court should not reach the merits of any
of the other objections to the Zingalli affidavit because these objections were
waived when the Borrower failed to obtain rulings from the trial court at or very
near the time the trial court ruled on the motion for summary judgment.  See Dolcefino v. Randolph, 19 S.W.3d 906, 926 (Tex. App.CHouston [14th Dist.] 2000, no pet.).








The Borrower argues that it
preserved error with respect to the remaining objections because the trial court
necessarily overruled them when it granted the Credit Suisse Parties leave to
submit this summary-judgment proof. 
However, allowing a party to supplement proof in a summary-judgment
proceeding does not necessarily imply a ruling as to the admissibility of the
proffered evidence.  See, e.g., ABT Galveston Ltd. P=ship v. Galveston Cent. App. Dist., 137 S.W.3d 146, 158 n.26 (Tex.
App.CHouston [1st Dist.] 2004, no pet.); Sunshine
Mining & Ref. Co. v. Ernst & Young, 114 S.W.3d 48, 51 (Tex. App.CEastland 2003, no pet.); Allen v.
Albin, 97 S.W.3d 655, 663 (Tex. App.CWaco 2002, no pet.); In re Estate
of Loveless, 64 S.W.3d 564, 573 (Tex. App.CTexarkana 2001, no pet.); Well
Solutions, Inc. v. Stafford, 32 S.W.3d 313, 317 (Tex. App.CSan
Antonio 2000, no pet.); Chapman
Children=s Trust v. Porter & Hedges, L.L.P., 32 S.W.3d 429, 435B36 (Tex. App.CHouston [14th Dist.] 2000, pet.
denied); Dolcefino, 19 S.W.3d at 926.  But see Blum v. Julian, 977 S.W.2d
819, 823B24 (Tex. App.CFort Worth 1998, no pet.); Mowbray
v. Avery, 76 S.W.3d 663, 689 n.45 (Tex.
App.CCorpus Christi 2002, no pet.).  Absent an implied or express ruling on the
objections, the objections are waived. 
The court should not conduct a substantive analysis as to the merits of
waived objections.[4]


B.        The Lender=s Parent did not establish
that it fell within the definition of Afinancial institution@ under Section
26.02(a)(1); however, the loan agreement alleged by the Borrower is
nevertheless unenforceable under section 26.02(b).

The Borrower asserts that the
Lender=s Parent
is not entitled to the benefit of section 26.02(b) because the Lender=s Parent
is not a Afinancial institution@ under
section 26.02(a)(1) of the Texas Business and Commerce Code, which reads:  

(1) AFinancial institution@ means a state or federally
chartered bank, savings bank, savings and loan association, or credit union, a
holding company, subsidiary, or affiliate of such an institution, or a lender
approved by the United States Secretary of Housing and Urban Development for
participation in a mortgage insurance program under the National Housing Act
(12 U.S.C. Section 1701 et seq.).

Tex. Bus. & Com.
Code Ann. ' 26.02(a)(1) (Vernon 2002).








Neither the Lender nor the Lender=s Parent
established that either of them was a state or federally chartered bank,
savings bank, savings and loan association, or credit union, or a holding
company, subsidiary, or affiliate of such an institution.  The summary-judgment proof establishes only
that the Lender is a HUD-approved lender as that term is used in section
26.02(a)(1).  The statute does not state
that an affiliate of a HUD-approved lender is a Afinancial
institution@; rather, to qualify as a Afinancial
institution@ under this provision, the Lender=s Parent
would need to show that it is (1) a state or federally chartered bank, savings
bank, savings and loan association, or credit union, (2) a holding company,
subsidiary, or affiliate of such an institution, or (3) a HUD-approved
lender.  The Lender=s Parent
did not establish any of these things. 
Therefore, the Lender=s Parent
did not demonstrate that it falls within the definition of Afinancial
institution@ under section 26.02(a)(1).  

The majority concludes that the Lender=s Parent
is entitled to summary judgment because there is allegedly no evidence that any
representative of the Borrower thought the loan would be funded by the Lender=s
Parent.  It seems clear from the Borrower=s
pleadings and summary-judgment response that the Borrower sufficiently alleged
a loan agreement involving the Lender=s
Parent.  According to the Borrower=s
pleadings, representatives of the Borrower conferred with authorized
representatives of the Lender=s Parent Awho were
in turn authorized to act on behalf of [the Lender] concerning potential financing
for the purchase of the building at 1001 McKinney, renovation of the office
building, and construction of a parking garage.@  The Lender funded the original loan.  The Borrower alleges that Tony Poll and Mark
FinermanCallegedly agents of both the Lender
and the Lender=s ParentCmade oral promises to the Borrower in
November 1999, to make an additional loan that was to have been funded in early
2000 Apursuant to the same business terms
that were made part of the original loan to the [Borrower].@ 
Essentially, the Borrower alleges the Lender=s Parent
was to fund the promised loan through the LenderCits Afunding
conduit.@[5]

 








Nonetheless, the Lender=s Parent
is entitled to summary judgment on the Borrower=s alleged
oral contract claim.  The reason,
however, is that the purported loan agreementCas
alleged by the BorrowerCis not
enforceable under section 26.02(b) of the Texas Business and Commerce
Code.  

ALoan
agreement@ is defined broadly in the
statute:

ALoan agreement@ means one or more
promises, promissory notes, agreements, undertakings, security agreements,
deeds of trust or other documents, or commitments, or any combination of those
actions or documents, pursuant to which a financial institution loans or delays
repayment of or agrees to loan or delay repayment of money, goods, or another
thing of value or to otherwise extend credit or make a financial
accommodation.  The term does not include
a promise, promissory note, agreement, undertaking, document, or commitment
relating to:

(A) a credit card or charge card; or

(B) an open-end account, as that term is defined by Section 301.002,
Finance Code, intended or used primarily for personal, family, or household
use.

 

Tex. Bus. & Com. Code Ann. ' 26.02(a)(2) (Vernon 2002).  The summary-judgment proof shows that the
Lender=s Parent
was not a party to the original Loan Agreement and does not make real estate
loans.  The Borrower, however, alleged
that the Lender=s Parent Awas
engaged in the investment banking business, and as part of that business
originated commercial mortgage loans, using [the Lender] as a funding entity
for those loans.@  








Under section 26.02(b), a loan agreement in which
the amount involved exceeds $50,000 is not enforceable unless it is in writing
and signed by the party to be bound or by that party=s
authorized representative.  Notably, the
statute does not rest the enforceability determination merely upon whether the
agreement was made by a financial institution; rather, the statute renders
unenforceable any loan agreement Apursuant
to which a financial institution loans . . . money.@  See Tex.
Bus. & Com. Code Ann. '
26.02(a), (b).  Under the Borrower=s
pleadings, the alleged agreement by the Lender=s Parent
is an agreement pursuant to which the LenderCa
financial institution as defined in the statuteCloans
money.  Thus, any such loan agreement
made by the Lender=s Parent
is unenforceable under the plain meaning of section 26.02.  See Tex.
Bus. & Com. Code Ann. '
26.02.  

Although the trial court granted summary judgment
in favor of the Lender in part based upon the section 26.02(b) ground, the
trial court granted summary judgment in favor of the Lender=s Parent
on a ground other than section 26.02(b). 
The majority bases its determination that summary judgment was proper as
to the Lender=s Parent upon section
26.02(b).  However, even though the trial
court declined to grant summary judgment in favor of the Lender=s Parent
based upon the section 26.02(b) ground, this court can, and in the interest of
judicial economy should, affirm the trial court=s summary
judgment based upon this ground.  See
Cincinnati Life Ins. Co. v. Cates, 927 S.W.3d 623, 625B26 (Tex.
1996) (holding that courts of appeals, in the interest of justice, may consider
summary-judgment grounds that the movant presented to the trial court but upon
which the trial court did not rule in granting the movant a final summary
judgment).    

II.  Common-Law-Fraud Claim

Although
the court correctly affirms the trial court=s summary-judgment as to the Borrower=s claims for statutory fraud,
negligent misrepresentation, breach of oral contract, and promissory estoppel,
the court errs in reversing the trial court=s judgment as to the common-law fraud
claim.  The Borrower cannot prevail on
its common-law fraud claim because the Borrower cannot show justifiable
reliance upon the alleged misrepresentations. 








Because
one of the essential elements of the Borrower=s common-law fraud claim is that the
Borrower justifiably relied upon the alleged misrepresentation by the Credit
Suisse Parties, if the Borrower cannot demonstrate this element, it cannot
possibly prevail on its fraud claim.  See
Ernst & Young, L.L.P. v. Pac. Mut. Life
Ins. Co., 51 S.W.3d 573, 577 (Tex.
2001) (stating that justifiable reliance is an essential element in a
common-law fraud claim).  In their motion
for summary judgment, the Credit Suisse Parties asserted a no-evidence ground
as to this essential element of the Borrower=s common-law fraud claim.  The Borrower failed to come forward with
evidence creating a genuine issue of material fact demonstrating justifiable
reliance upon the Credit Suisse Parties= alleged oral loan agreement.

The Borrower
claims that Poll and Finerman made the alleged oral loan commitment to one of
the Borrower=s principals, Herbert L. Levine,
during a trip to Las Vegas
in November 1999.  The trial court
granted summary judgment in favor of the Lender=s Parent on the ground that Athere is no evidence that any actions
were taken by an agent or representative of, at the direction of, or on the
behalf of [the Lender=s Parent].@  The Lender=s Parent, however, did not expressly
present this ground in its motion for summary judgment.  For this reason, the trial court erred in
granting summary judgment on this basis.  See Johnson v. Brewer & Pritchard, P.C.,
73 S.W.3d 193, 204 (Tex.
2002).  However, in the interest of
justice, this court should affirm the summary judgment based upon the
no-evidence ground as to the justifiable-reliance element of the
common-law-fraud claim.  See Cates, 927
S.W.3d at 625B26 (holding that courts of
appeals, in the interest of justice, may consider summary-judgment grounds that
the movant presented to the trial court but upon which the trial court did not
rule in granting the movant a final summary judgment). 








According
to the Texas Supreme Court, the defrauded party must actually and justifiably
rely upon the alleged fraudulent representation.  Ernst & Young, 51 S.W.3d at
577.  The majority opinion states that A[i]n the context of common-law fraud,
courts have uniformly treated the issue of justifiable reliance as a question
for the factfinder.@[6] 
If there is a genuine issue of material fact as to whether reliance was
justifiable in a common-law fraud case, then, of course, the factfinder should
determine this issue.  But the issue of
whether reliance was justifiable in a common-law fraud case does not always
have to be determined by the factfinder and may be determined as a matter of
law.  See Little v. Liquid Air Corp.,
37 F.3d 1069, 1075B76 (5th Cir. 1994) (stating in per curiam, en banc opinion,
that regardless of the type of claim being asserted, trial courts must always
grant summary judgment where critical evidence is so weak or tenuous on an
essential fact that it could not support a judgment in favor of the nonmovant);
In re Absolute Res. Corp., 76 F. Supp. 2d 723, 731 (N.D. Tex. 1999)
(granting summary judgment as to fraud claim and holding there was no genuine
issue of material fact as to whether alleged reliance by plaintiff on alleged
oral assurances that loan would be finalized was justifiable); Bennett v.
Cochran, No. 14-00-01160-CV, 2004 WL 852298, at *6 (Tex. App.CHouston [14th Dist.] April 22, 2004,
no pet.) (holding in memorandum opinion that, as a matter of law, there was no
evidence to support the jury=s finding that plaintiff=s reliance was justifiable); Atlantic
Lloyds Ins. Co. v. Butler, 137 S.W.3d 199, 226B27 (Tex. App.CHouston [1st Dist.] 2004, pet.
denied) (affirming summary judgment as to fraud claim because there was no
genuine issue of material fact as to whether the plaintiff=s alleged reliance was justifiable); Beal
Bank, S.S.B. v. Schleider, 124 S.W.3d 640, 651B52 (Tex.
App.CHouston
[14th Dist.] 2003, pet. denied) (holding that there was no evidence to support
the jury=s finding
that plaintiff=s alleged reliance on lender=s alleged
statements was justifiable); Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment
Homes, Inc., 907 S.W.2d 904, 909 (Tex. App.CHouston [1st Dist.] 1995, writ denied) (holding
there was no evidence to support jury=s finding
that alleged reliance by borrower on alleged oral assurances by lender that
loan restructuring proposal would be accepted was justifiable). 








Furthermore,
the two cases cited by the majority do not support the proposition that
justifiable reliance should always be determined by the factfinder.  See Coston v. Bank of Malvern, 991
F.2d 257, 260 (5th Cir. 1993) (stating, in per curiam, en banc opinion, that
courts in common-law fraud cases treat the issue of justifiable reliance as a
question for the factfinder that is subject to deferential, rather than de novo
review following trial on the merits); Hall v. Harris County Water Control
& Imp. Dist. No. 50, 683 S.W.2d 863, 868 (Tex. App.CHouston [14th Dist.] 1984, no writ)
(stating that issue of whether reliance was reasonable in a promissory estoppel
claim is generally a question of fact). 
The only explanation given by the majority as to why it concludes there
is a genuine issue of material fact regarding the justifiability of the alleged
reliance is that the Borrower had a business relationship with the Credit
Suisse Parties.  Evidence of a business
relationship is not by itself sufficient to raise a genuine issue of material
fact as to whether the alleged reliance was justifiable.  See Beal Bank, S.S.B., 124
S.W.3d at 651B52 (holding that there was no
evidence to support the jury=s finding
that plaintiff=s alleged reliance on lender=s alleged
statements was justifiable despite existence of business relationship between
parties); Bluebonnet Sav. Bank, F.S.B., 907 S.W.2d at 909 (holding there
was no evidence to support jury=s finding
that alleged reliance by borrower was justifiable despite existence of business
relationship between parties). 








Factors
used to determine whether reliance was justifiable include the sophistication
of the parties and the nature of the transaction.  See Beal Bank, S.S.B., 124
S.W.3d at 651B52; Coastal Bank S.S.B. v. Chase Bank of Texas, N.A., 135 S.W.3d 840, 843 (Tex.
App.CHouston [1st Dist.] 2004, no
pet.).  The party claiming fraud must
exercise ordinary care to protect its interests and is assumed to know all
facts that would be discovered by a reasonably prudent person similarly
situated.  Wil-Roye Inv. Co. II v. Washington Mut. Bank,
F.A., 142 S.W.3d 393, 411 (Tex.
App.CEl Paso 2004, no pet.).  In the context of bargaining between
sophisticated and adversarial parties, reliance upon a misrepresentation that
easily would be refuted with reasonable diligence is not justifiable.  Atlantic Lloyds Ins. Co. v. Butler,
137 S.W.3d 199, 226 (Tex. App.CHouston [1st Dist.] 2004, pet. denied); Coastal Bank
S.S.B., 135 S.W.3d at 843.  A party=s failure to exercise care is not
excused by mere confidence in the honesty and integrity of the other
party.  Coastal Bank, 135 S.W.3d
at 843. Subjective beliefs will not make reliance justifiable.  Nor will mere subjective trust transform an
arm=s length dealing into a relationship
that carries a fiduciary duty.  Meyer
v. Cathey, 167 S.W.3d 327, 331 (Tex.
2005).  Likewise, a cordial business
relationship of long duration is not evidence of a confidential or fiduciary
relationship.  Farah v. Mafrige &
Kormanik, P.C., 927 S.W.2d 663, 675 (Tex. App.CHouston [1st Dist.] 1996, no
writ).  Generally, the relationship
between a borrower and a lender is an arm=s length business relationship in
which both parties are looking out for their own interests.

This
court recently examined the issue of justifiable reliance in a lending
relationship in Beal Bank, a case in which the borrower-plaintiff
(Schleider) claimed the lender-defendant (Beal Bank) made an oral agreement to
extend the payment time on the Borrower=s promissory note despite the
original note stating that the loan could only be modified in writing.  124 S.W.3d at 645B46. 
The borrower had been in business for nearly thirty years and had
negotiated several such loans.  Id. at 652.  In rejecting the borrower=s fraud claim, this court concluded
that an experienced businessman=s alleged reliance upon an oral representation by a bank
employee was not justifiable as a matter of law.  Id.  As support for the Beal Bank decision,
this court cited Bluebonnet Savings Bank, a First Court of Appeals
decision with a similar fact pattern. 
The borrower in Bluebonnet similarly alleged he had negotiated
orally to restructure a loan despite contrary language in the original loan
document.  907 S.W.2d at 909.  The Bluebonnet court held that as an
experienced businessman, the borrower should have known not to rely upon these
oral representations and therefore his reliance was not justifiable.  Id.  Applying the same rationale, the Borrower=s alleged reliance upon the Credit
Suisse Parties= alleged oral agreement to fund a new
loan was not justifiable. 








At the
time in question, the Borrower was a partnership headed by an experienced
commercial real estate developer (Levine) and, by any relevant measure, was a
very sophisticated business party.  The
Borrower had developed a course of dealing with the Lender through a previous,
complex, multi-million-dollar loan transaction in which both parties were represented
by counsel.  The parties, operating at
arm=s length, were adversarial, and thus
the Borrower was required to exercise ordinary care in its dealings with the
Lender and the Lender=s Parent.[7]  

The
summary-judgment record establishes that Levine was familiar with the practices
and procedures generally associated with obtaining a commercial loan.  For example, he understood that any loan
commitments were subject to loan-committee approval, adequate due diligence,
and proper loan documentation.  More
importantly, Levine was familiar with the particular lending practices and
procedures employed by the Lender, the Borrower having been through the
extensive loan process with the Lender in the recent past in a transaction
involving the same property as the alleged oral loan agreement made the subject
of the Borrower=s fraud claim.

The
parties= previous transaction involving a
loan secured by the property was memorialized in an eighty-eight-page,
single-spaced Loan Agreement negotiated by the parties= lawyers under circumstances in which
each party was looking out for its own interests and operating at arm=s length in an adversarial
context.  The Loan Agreement for the
original loan was signed only after extensive loan committee procedures
required to garner approval for the loan. 
The transaction was highly structured and extensively documented in a
two-volume closing binder consisting of thirty-nine separate documents. The
Loan Agreement has a five-page table of contents, more than 225 defined terms,
and a dozen pages of covenants required of the Borrower as part of the Lender=s agreement to fund the loan.  According to the Borrower, the loan orally
promised in Las Vegas
was to be a mirror image of the previous transaction between the parties. 








Before
the previous loan closed, the Borrower expressly acknowledged that the loan for
which it had applied remained contingent upon approval by the Lender=s internal loan committee and the
execution and delivery of definitive agreements.  The Loan Agreement contained a provision in
which the Borrower expressly acknowledged that Ano officer or administrator of Lender
has the power or authority from Lender to make an oral extension or
modification or amendment of any [of the Project Loan agreements] on behalf of
Lender.@ 

Moreover,
in their prior dealings the parties specifically addressed the importance of
memorializing in writing any agreements by which the Borrower would seek to
bind the Lender.  In their previous
transaction, the parties addressed the need for writings generally, stating in
their Loan Agreement:

Borrower
recognizes that, in general, borrowers who experience difficulties in honoring
their loan obligations, in an effort to inhibit or impede lenders from
exercising the rights and remedies available to lenders pursuant to mortgages,
notes, loan agreements or other instruments evidencing or affecting loan
transactions, frequently present in court the argument, often without merit,
that some loan officer or administrator of Lender made an oral modification or
made some statement which could be interpreted as an extension or modification
or amendment of one or more debt instruments and that the borrower relied to
its detriment upon such Aoral modification of the loan document.@  For that
reason, and in order to protect Lender from such allegations in connection with
the transaction contemplated by this Agreement, Borrower acknowledges that this
Agreement, the Mortgage, the Note and the other Loan Documents and all
instruments referred to in any of them can be extended, modified or amended
only in a writing executed by Lender and Borrower and that none of the rights
or benefits of Lender can be waived permanently except in a written document
executed by Lender. Borrower further acknowledges Borrower=s understanding that no officer or administrator of
Lender has the power or the authority from Lender to make an oral extension or
modification or amendment of any such instrument or agreement on behalf of
Lender.[8]  

 








Thus, as part of their
course of dealing, these parties had established through their conduct and
interaction a common basis of understanding and a practice of not relying on
unwritten promises and agreements in their business relationship.

It is
against this backdrop of prior dealings in similar circumstances that we must
determine if the Borrower justifiably relied on the Lender=s alleged oral promise to loan
additional funds on the same property. Likewise, it is the individual
characteristics of this Borrower and its appreciation of the facts and
circumstances at the time of the alleged fraud that we must consider in
determining if the alleged reliance was justifiable.  See Haralson v. E. F. Hutton Group, Inc.,
919 F.2d 1014, 1026 (5th Cir. 1990), overruled on other grounds, Gustafson
v. Alloyed Co., 513 U.S. 561, 584, 115 S. Ct. 1061, 1079, 131 L. Ed. 2d 1
(1995).  As a matter of logic, how could
the Borrower have justifiably relied on statements that were belied by its own
experience?

Just as
the individual borrower-plaintiff in Beal Bank was not justified in
relying upon the bank=s alleged oral representation that it would grant an
extension of an existing loan, the BorrowerCa sophisticated business entity that
had agreed not to rely on unwritten promises in a prior transaction with the
same party on the same propertyCwas not justified in relying on the alleged unwritten promise
of the Credit Suisse Parties that they would lend additional funds.  See Beal Bank, S.S.B., 124 S.W.3d at 651B52. 
The summary-judgment proof does not raise a genuine issue of material fact
as to whether the Borrower justifiably relied on these alleged
representations.  See In re
Absolute Res. Corp., 76 F. Supp. 2d at 731; Beal Bank, S.S.B., 124
S.W.3d at 651B52; Bluebonnet Sav. Bank, F.S.B.,
907 S.W.2d at 908B09. 








The Borrower
attempts to distinguish Beal Bank, claiming that the additional $6.75
million was not a modification of the original loan but rather an entirely
separate loan.  Essentially, the Borrower
argues that it had no reason to believe that the requirements of the original
multi-million dollar loan would apply to this new multi-million dollar loan
even though the Borrower alleges that the loan documentation for the latter was
to have been a mirror image of the original loan.  Knowing that a modification of the existing
loan could be enforced only if in writing, and knowing from its own recent
experience with obtaining a loan secured by this property, from this lender,
that approval from a lending committee was required, the Borrower could not
have justifiably relied on an alleged promise that a new loan commitment could
be created without a writing and without any of the procedures required with
the original loan. 

Given
the prior dealings between the parties and the Borrower=s express, written acknowledgment
that no officer of the Lender had the power or authority to make an oral
agreement on its behalf, the Borrower could not have justifiably relied on
having created an enforceable loan agreement by virtue of oral statements
allegedly made during a trip to Las
 Vegas.  Indeed,
to the extent the Borrower relied on the alleged oral statements of the Credit
Suisse Parties, that reliance was unreasonable in light of the information
apparent to the Borrower.  Under these
circumstances, the law may properly say that any loss is the responsibility of
the Borrower.  Because the Borrower
failed to raise a material issue on an essential element of common-law fraud,
the Borrower=s fraud claim necessarily fails.  This court should overrule the Borrower=s challenge to the trial court=s summary judgment on the fraud claim
and affirm the judgment of the trial court in all respects.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Majority and Concurring and
Dissenting Opinions filed November 23, 2005.

 

Panel consists of Chief Justice Hedges, Justice
Frost, and Senior Chief Justice Murphy.[9]  (Hedges, C.J., majority.)

 

 











[1]  These termsCABorrower@ and ALender@Care the same terms used to define these parties in the
Loan Agreement, dated as of June 16, 1998, in which the Lender agreed to lend
the Borrower $39,195,000. 





[2]  Credit Suisse
First Boston LLC is the successor by merger to Credit Suisse First Boston
Corporation.





[3]  See
Hou-Tex., Inc. v. Landmark Graphics, 26 S.W.3d 103, 112 (Tex. App.CHouston
[14th Dist.]  2000, no pet.)
(holding objection that affidavit is conclusory is a substantive defect that
can be raised for the first time on appeal).





[4]  For this
reason, there is no need to address whether the majority=s substantive analysis is correct.





[5]  In the trial court,
both of the Credit Suisse Parties moved for summary judgment as to the Borrower=s breach-of-oral-contract claim based on the statute
of frauds contained in section 26.02(b). 
At the time of this motion, the Borrower alleged in its second amended
petition that both of the Credit Suisse Parties made these alleged promises in
November of 1999, and were liable to the Borrower for breach of an alleged oral
contract.  After the trial court denied
this motion for summary judgment but before the trial court reconsidered its
decision and granted this motion, the Borrower amended its petition.  In this third amended petition, the Borrower
added some new allegations and focused more attention on the Lender=s Parent; however, the essential facts and allegations
are not substantially different from the prior petition.  The third amended petition does not add any
new claims, and in it, the Borrower continues to assert a
breach-of-oral-contract claim against both the Lender and the Lender=s Parent. 
Therefore, the section 26.02(b) summary-judgment ground is sufficiently
broad to cover the breach-of-oral-contract claims asserted against the Lender
and the Lender=s Parent in the Borrower=s third
amended petition.  See Wilson v.
Korthauer, 21 S.W.3d 573, 579 (Tex. App.CHouston
[14th Dist.] 2000, pet. denied) (holding that, if the summary-judgment grounds
are sufficiently broad to encompass the claims contained in an amended pleading
filed after the motion, then movants need not amend their motion for summary
judgment to address this amendment).





[6]  Majority Op.,
page 12.





[7]  The Borrower
suggests that evidence of a longstanding business relationship might establish
that its reliance was justifiable. 
However, the Texas Supreme Court has stated that mere subjective trust
does not transform arm=s length dealing into fiduciary duty.  Meyer, 167 S.W.3d at 331; see also
Farah, 927 S.W.2d at 675 (holding that a Acordial@ business relationship of Along duration@ is not
evidence of a confidential or fiduciary relationship).





[8]  Emphasis
added.





[9]  Senior Chief Justice Paul C. Murphy
sitting by assignment.